WYATT-BULLARD LUMBER COMPANY v. MARY F. BOURKE ET AL.

FILED MAY 4, 1898. No. 8017.

1. **Mortgages: ESTATES: MERGER.** Ordinarily, when one having a mortgage on real estate becomes the owner of the fee the former estate is merged in the latter.

2. ———: ———: ———. But the mortgagee may in such case keep his mortgage alive when it is essential to his security against an intervening title. If there was no expression of his intention in relation to the matter at the time he acquired the equity of redemption, it will be presumed, in the absence of circumstances indicating a contrary purpose, that he intended to do that which would prove most advantageous to himself.

3. ———: EQUITY OF REDEMPTION: PURCHASE BY MORTGAGEE. When the equity of redemption is sold on judicial process against the owner thereof the mortgagee may purchase and hold the same either for himself or in trust for such owner.

4. **Trusts: PURCHASER AT EXECUTION SALE.** Evidence examined, and *held* to sustain a finding of the trial court that the grantee in a deed given as security purchased the equity of redemption at an execution sale in trust for the grantor.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J. *Affirmed.*

*G. W. Shields,* for plaintiff in error.

*Charles A. Goss* and *R. W. Richardson, contra.*

SULLIVAN, J.

Charles C. Garmong, being the owner of part of lot 11, in block 13, of E. V. Smith's Addition to the city of

Omaha, mortgaged the same to Mary F. Bourke to se-
cure an indebtedness of $3,500. The Merchants National
Bank had a judgment lien against the property, subject
to the Bourke mortgage, and, subject to said mortgage
and judgment, the Wyatt-Bullard Lumber Company had
a warranty deed executed to it by Garmong and his wife,
Clara C. Garmong, conveying said premises as security
for the payment of a promissory note for $1,850, due
and payable on July 29, 1892. On September 29, 1891,
the property was sold for the satisfaction of the bank's
judgment and the lumber company became the pur-
chaser at the sale, and on October 14, 1891, obtained
a sheriff's deed therefor. This deed was not recorded
until April 11, 1893, and the lumber company made no
attempt at any time to obtain possession of the premises
or to secure the rents and profits thereof. John A. Hor-
bach was the agent of the plaintiff for the collection of
her claim against Garmong and was, also, the agent
of Garmong to manage the property and collect the
rents. As such agent he did, after the sale and up to
the time of the trial, without any objection on the part
of the lumber company, manage the property, collect
the rents, and apply the same upon the Bourke mort-
gage. In this action, which was brought to foreclose
said mortgage, the lumber company, being made a party
defendant, filed an answer claiming to be the fee owner
of the premises from the date of the sheriff's deed and
demanding a judgment against the plaintiff for the rents
collected by Horbach and received by her. Upon the
trial, which was had December 12, 1894, the court
specially found as follows: "The court further finds from
the evidence that the defendant Wyatt-Bullard Lumber
Company purchased said real estate at said sale as the
trustee of Charles C. Garmong, and for the purpose of
preserving and protecting their interest therein as
trustees or mortgagees, and they are entitled to add the
sum so paid to the amount of their lien on said prem-
ises. The court also finds that said Wyatt-Bullard Lum-

ber Company would be entitled to a lien upon said real estate for the balance still due and unpaid from Charles C. Garmong, it being admitted in open court by said company that a part of its claim is paid, but the said Wyatt-Bullard Lumber Company having refused and declined to amend its cross-petition and to take proof as to said balance, and having elected to stand on its answer and cross-petition filed herein, no finding of a lien in favor of said Wyatt-Bullard Lumber Company is herein made, to all of which above findings Wyatt-Bullard Lumber Company duly excepts."

The lumber company insists that this finding is not sustained by the evidence and that the judgment against it based thereon should be reversed. There was, it is true, no understanding or agreement between Garmong and the company that the latter should buy the property and hold the title thereto in trust for the former; neither was there any such obligation imposed by law. Nevertheless, the conclusion reached by the trial court is warranted by the evidence and must be approved. Mrs. Garmong was not a party to the judgment on which the sale was made, and, therefore, the sale did not extinguish her inchoate right of dower in the premises. The estate acquired by the warranty deed being superior to the right of dower, and that obtained by the sheriff's deed being subordinate to that right, the best interests of the company demanded that the two estates be kept separate so that its rights under the former deed might be asserted in a court of equity if the necessity therefor should ever arise. Whether the estate conveyed by the warranty deed merged in the estate conveyed by the deed of the sheriff would depend, of course, on the intention of the company at the time it acquired the equity of redemption. (*Forbes v. Moffat*, 18 Ves. Jr. [Eng.] 384; 2 Pomeroy, Equity Jurisprudence, [1st ed.] sec. 791; *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb. 207.) There being, at that time, no unequivocal expression of intention, its purpose must be inferred from its acts and con-

duct and from all the circumstances surrounding the transaction. The rule is that it will be presumed to have intended to do that which would prove most advantageous to itself. In the case of *Lowman v. Lowman*, 118 Ill. 582, it is said: "It will be presumed, as matter of law, that the mortgagee must have intended to keep his mortgage alive, when it was essential to his security against an intervening title or incumbrance." It is further said in the same case that the failure to surrender the notes and cancel the mortgage is a circumstance indicating that the mortgage had not been extinguished. In this case it is clear that a merger of the two estates would be prejudicial to the interests of the company, and that fact alone justifies the presumption that no merger occurred. The inferences afforded by the company's conduct also tend strongly to establish the same conclusion. In purchasing at the execution sale its purpose manifestly was to protect the interest it already had and not to acquire a new title. That it might have bought the equity of redemption for itself and still kept its mortgage on foot is not to be doubted. (*Mathews v. Jones*, 47 Neb. 616; *Miller v. Finn*, 1 Neb. 254; *Vanderkemp v. Shelton*, 11 Paige Ch. [N. Y.] 28.) But apparently it did not buy for itself but for Garmong; and it is evident the latter ratified and approved its act, for, notwithstanding the sale, he continued to deal with the property as the owner thereof. He exercised complete dominion over it, expelling one tenant, putting another in possession, paying taxes and insurance, making repairs, and collecting rents. It also appears that he made payments on his indebtedness to the company after the sale. At the same time the conduct of the company, in failing to record its deed, in making no demand for possession or for the rents, although the property was yielding a monthly rental of $30, is not explicable on the theory that it bought for itself or considered itself the absolute owner. As the conclusion thus reached must result in an affirmance of the judgment of the trial court,

it becomes unnecessary to examine and decide other questions discussed in the briefs of counsel. The judgment of the district court is

AFFIRMED.