LARSON CEMENT STONE CO., A CORPORATION, APPELLANT, V. REDLIM REALTY CO. ET AL., APPELLEES, IMPLEADED WITH BUSS & WELCH EXCAVATING CO., A PARTNERSHIP, ET AL., APPELLANTS.

137 N. W. 2d 241

Filed October 8, 1965. No. 35918.

Crawford, Garvey, Comstock & Nye, McGrath, North & Macnamara, Boyle & Hetzner, Marks, Clare, Hopkins & Rauth, Collins & Collins, and Louis T. Carnazzo, for appellants.

John W. Delehant and John E. Dean, for appellee First Federal Savings & Loan Assn.

Heard before WHITE, C. J., CARTER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and WESTERMARK, District Judge.

WESTERMARK, District Judge.

This is a foreclosure action in which the principal question is whether or not material and labor liens are entitled to priority over a renewal mortgage. The original or senior mortgage as well as the subsequent mortgage were given to secure advances to be made by the mortgagee during the progress of the construction of four apartment buildings in Omaha, Nebraska.

The district court held that the subsequent mortgage related back to the senior mortgage, and the subsequent mortgage lien was prior and superior to the material and labor liens. The plaintiff, Larson Cement Stone Company, a holder of a material lien, and certain defendant holders of material and labor liens are the appellants herein. The defendant, First Federal Savings and Loan Association of Lincoln, the holder of the mortgage, is the principal appellee.

There is no conflict as to the essential facts. One Meyer H. Feldman and Redlim Realty Company, a corporation, whose stockholders were Howard Milder and Freda B. Milder, were the owners of an unimproved tract of land in Omaha, Nebraska. On June 28, 1962, these parties executed and delivered to appellee their

note in the sum of $300,000 which was secured by a real estate mortgage on the real estate. The mortgage was recorded July 3, 1962. The note was to be paid in monthly installments of $2,210 each. The first installment was due April 1, 1963. Meyer H. Feldman conveyed his interest in the real estate to Redlim Realty Company on January 15, 1963. This deed was recorded January 21, 1963. Up to this time the construction of the buildings had progressed slowly. For the purpose of releasing Meyer H. Feldman on the original or senior note and to extend the date of the first installment from April 1, 1963, to September 1, 1963, a new note and mortgage for the same amount was executed and delivered to appellee. This note and mortgage, which will be referred to as "subsequent note and mortgage," was executed January 15, 1963, by Redlim Realty Company and by Howard Milder and Freda B. Milder as individuals. A release of the senior mortgage dated January 14, 1963, was placed of record January 18, 1963. The parties agree that the appellants supplied the first items of their respective liens before January 15, 1963, and that the liens were properly filed as provided by law. The amounts due each lienholder are not questioned. For that reason, it is unnecessary to set out in this opinion the names of the lienholders and the amounts due each. It is conceded and agreed that the appellee did not advance any money to Redlim Realty Company or pay any suppliers of material or labor before January 14, 1963, the date of the release of the senior mortgage. The first payment or advance was made by appellee on January 15, 1963.

The evidence shows that construction of the apartment buildings continued until May or June 1963, when completion was stopped because of some alleged violation of zoning and building code regulations of Omaha, Nebraska; and that the appellee advanced to Redlim Realty Company and paid to suppliers upon the written authorization of Redlim Realty Company the sum of

$187,539.65 of which $5,800 was repaid leaving a net disbursement of $181,739.65. The district court found and held that this amount plus interest was due appellee on its note and mortgage; and that the subsequent mortgage constituted a lien upon the premises with priority as of July 3, 1962, which lien is prior to the liens of the other parties.

The appellants do not question the general rule relating to the discharge of a senior mortgage which was released of record upon the acceptance of a subsequent mortgage which is set out in Hadley v. Schow, 146 Neb. 163, 18 N. W. 2d 923. It is as follows: " 'It is a general rule that the cancellation of a mortgage on the record is not conclusive as to its discharge, or as to the payment of the indebtedness secured thereby. And where the holder of a senior mortgage discharges it of record, and contemporaneously therewith takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien unless the circumstances of the transaction indicate this to have been his intention, or such intention upon his part is shown by extrinsic evidence.' "

The main contentions of appellants are that the senior mortgage was invalid; that the appellee having made no distribution or advance of the proceeds of the note before the release of record there was no debt to support the senior mortgage, that is, no debtor or creditor relationship was established; and that the appellee was not unconditionally required to make any advances but was given an option to make advances in the future. Because of these contentions the appellants argue that appellee had no lien under its senior mortgage and that advances made after the acceptance of the subsequent mortgage did not validate the senior mortgage nor was any lien established.

In support of the contention that there must be a valid debt to support a mortgage, appellants cite Columbus Land, Loan & Building Assn. v. Wolken, 146 Neb. 684,

21 N. W. 2d 418, 165 A. L. R. 1285, which holds: " 'A mortgage is a mere security. It has no efficacy if unaccompanied by a debt or obligation. The debt is the principal thing; the land is incident. Davidson v. Cox, 11 Neb. 250.' " The case of Ginsberg v. Capitol City Wrecking Co., 300 Mich. 712, 2 N. W. 2d 892, involved the lien of a mortgage given to a loan company for the purpose of financing the building. No advance had been made. The court found that no valid lien had been created. The court held in substance that an instrument can only take effect as a mortgage or encumbrance from the time some debt or liability shall be created, or some binding contract is made, which is to be secured thereby. The facts in that case show that on the date of the mortgage the makers of the mortgage authorized the loan company to make disbursements for payment of prepaid items due the builder for the construction of a residence and the money advanced was to be charged against the loan. The court found "no money was advanced by the Lanphar company, (loan company) nor is there any evidence that the Lanphar company promised or agreed to pay the materialmen and secure by the mortgage instrument any money so disbursed."

In this case the appellee loan company agreed to make disbursements or advancements as the construction progressed. Although no advances had been made prior to the execution of the subsequent mortgage, the evidence shows that the construction on January 15, 1963, was limited to some excavating, cement block work, and furnishing of lumber and footings. There is no evidence indicating that any advances should have been made by that time.

The testimony of E. Dewey Straka, Jr., vice president and branch manager of appellee is evidence of what the agreement was relative to advances. His testimony was as follows: "Q. About how far along was the construction on January 16, 1963? A. There were portions of the excavating, block work, and some lumber on

the site. Q. Was the agreement of First Federal to disburse funds to Redlim Realty Co. as the construction progressed? A. That is correct. Q. Approximately what was your agreed draw schedule or pay out schedule with Redlim Realty Co. and Mr. Feldman? A. It would be based upon our physical inspection of the improvements to be erected. We would estimate the percentage of completion and make our disbursements accordingly. Q. Mechanically, tell the Judge how you would make payments to Mr. Milder? What was your agreement? You would pay him when a certain percentage was done, would you? A. When a certain percentage of the work was completed on the job site and inspection so indicated; then we would make our percentage loan disbursement directly to Redlim Realty Co."

It is obvious that appellee undertook and became obligated to make advances "as the construction progressed." The evidence does not support the inference that it had an option to make any or no advance. The fact that there was no present debt at the time of the execution of the senior mortgage did not invalidate that mortgage. It secured future advances. "A mortgage need not be founded on a present debt, * * *. The mortgage may be made to secure future advances * * *." 36 Am. Jur., Mortgages, § 63, p. 720. See, also, 36 Am. Jur., Mortgages, §§ 64 and 65, pp. 720 and 721.

In our opinion, the holding in Creigh Sons & Co. v. Jones, 103 Neb. 706, 173 N. W. 687, is not only applicable but controlling. The Creigh case was identical to the instant case in that mechanic lienholders were attempting to get priority against a mortgage on the theory that the lienholders had done work before any advances were made upon the mortgage. The syllabi in the case reflects the holding of this court. They are as follows: "If the owner of real estate contracts to borrow money to erect buildings thereon, and gives a mortgage upon the real estate to secure the loan, which, by agreement, is to be advanced as the buildings progress, the lien of the

mortgage begins upon the recording thereof. * * * Under such agreement, the advancement of the money is not optional with the mortgagee, but must be advanced as the building has progressed."

Although we conclude that the future advances in the present case were promised and not optional, we point out that the Legislature has fixed the priority of some optional advances at the time the mortgage is recorded. See § 76-238.01, R. S. Supp., 1963.

The district court correctly held that the subsequent mortgage was a paramount and superior lien as of July 3, 1962; and it was prior to the liens of appellants.

Two other issues were presented by the appeal. These related to certain advances made by appellee on the authorization of Redlim Realty Company for which appellee required subordination of lien agreements. However, inasmuch as this court has determined that the mortgage lien of appellee is prior and superior to the material and labor liens, it becomes and is unnecessary to discuss those issues in this opinion.

For the reasons given above the judgment of the district court was correct and hereby is affirmed.

AFFIRMED.