RAYMOND INTERNATIONAL, INC., APPELLANT, V. REALBANC, INC., ET AL., APPELLEES.

260 N. W. 2d 484

Filed December 21, 1977. No. 41170.

Michael J. Dugan and Martin W. Pinkwitz of Costello & Dugan, for appellant.

Renne Edmunds of Knowles & Edmunds and Edward G. Garvey, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

This is an action brought by a contractor to establish the priority of and to foreclose a mechanic's lien. The appellant, hereinafter referred to as Raymond, seeks to establish its mechanic's lien as prior to construction loan mortgages. If not, Raymond claims the lien is prior to advances made by the mortgagee after notice of its filing. The trial court determined the amount of the lien but subordinated it to advances made by appellees-mortgagees subsequent to notice of the Raymond lien. We affirm.

OCC, Inc., and Raymond entered into a contract pursuant to which Raymond was to construct and drive the foundational piling for the office building being erected by OCC, Inc. The proposal was made by Raymond on January 24, 1974. Pursuant to the request of OCC, Inc., Raymond completed moving its equipment onto the job site February 10, 1974. After the equipment was assembled, Raymond was informed that OCC, Inc., was having second thoughts concerning the project. Pending further developments, OCC, Inc., agreed to on-site rental plus payment of delay costs to keep the equipment available if and when OCC, Inc., was ready to proceed.

On July 19, 1974, Raymond executed an agreement which provides in part: "WHEREAS, Owner and Contractor agree it is desirable to immediately commence construction, however, Owner will not allow construction to commence unless Contractor agrees to subordinate any lien which it may have upon the Property to the lien of a construction loan to be made to Owner (or to a party designated by Owner).

"NOW, THEREFORE, in consideration of the mutual covenants and conditions contained herein

and of the benefits accruing to each party, it is agreed as follows:

"1.  Contractor hereby agrees to subordinate any mechanic's and materialmen's lien or any other lien which may arise in connection with the performance of construction work by Contractor on the Property to any construction loan to be made to Owner (or any party designated by Owner), including without limitation a construction loan from BA Mortgage Company of Texas, Inc.

"2.  Simultaneously with the closing of such construction loan, Contractor shall execute a recordable document subordinating any such liens to the lien created by such construction loan in such form as may be satisfactory to Pioneer National Title Insurance Company.

"3.  Contractor understands that this agreement is a material consideration to Owner in connection with the commencement of construction work by Contractor."

The first pile was driven by Raymond on August 7, 1974.  Work was completed on October 17, 1974.  On July 24, 1974, Raymond requested payment of $60,000, claimed owed to it to that date.  It received $45,000.  No other payments were made.  A check, subsequently given in partial payment, was never cleared.  Raymond filed a mechanic's lien on November 17, 1974, in the amount of $152,909.78.  Notice of this lien was given to all defendants on November 27, 1974.

On August 28, 1974, OCC, Inc., mortgaged the real estate as follows:

1.  To appellee Realbanc, Inc., $7,500,000.

2.  To appellee Heitman Mortgage Investors, $1,000,000.

3.  To Realbanc, Inc., $1,000,000.

Raymond argues first the validity of the subordination agreement.  It takes the position there are two material questions of fact in reference to the

agreement. First, it argues there is an absence of any consideration benefiting Raymond. Second, it argues the general language of the instrument makes it apparent that the agreement is not complete in itself but requires something more in the future. There is no merit to either contention.

After the execution of the agreement, Raymond received $45,000 on expenses accrued to that date. Subsequent to that date, the proposed contract dated January 24, 1974, and revised February 4, 1974, and July 19, 1974, was executed. There is no question the execution of the contract depended upon the subordination agreement.

The evidence shows Raymond had not performed any work on the project with the exception of moving its equipment onto the job site prior to the execution of the agreement. Further, Raymond did not have a contract until its proposal was accepted on July 23, 1974, and subsequently approved. There is no question — the consideration was sufficient for the agreement.

Raymond's second point is the agreement was never completed. This contention is premised on the requirement that simultaneously with the closing of the construction loan, Raymond was to execute a recordable document, subordinating its lien in a form satisfactory to Pioneer National Title Insurance Company. This was never done.

In the first paragraph, however, Raymond specifically agreed to subordinate any mechanic's and materialmen's lien, or any other lien which would arise in connection with the performance of its construction work to the construction loan. The title insurance company, which provided the title and mortgage insurance required by the building and loan agreement, accepted the agreement as executed and did not require any further subordination agreement. Pioneer National Title Insurance Company decided the agreement of July 19, 1974, was in

itself recordable and was in a form satisfactory to it.

It is obvious to us that the first paragraph constituted the subordination agreement. The second paragraph merely provided for the execution of a recordable document in such form as would be satisfactory to the title insurance company. Pioneer was satisfied with the agreement tendered and did not require any further document. The additional document was nothing more than a housekeeping document which was to be executed if needed. Even if Pioneer had decided the agreement was not in recordable form, and insisted on the furnishing of a subsequent document, Raymond could not have avoided the fact that the agreement itself subordinated any lien it might have to the construction loan mortgages.

Raymond's main contention is that its lien should have priority over all advances made under the construction loan subsequent to November 27, 1974, the date notice of its lien was given to the defendants. Raymond has cited cases from other jurisdictions which do hold that advances made after a mortgagee could declare a default are optional rather than obligatory.

In Creigh Sons & Co. v. Jones, 103 Neb. 706, 173 N. W. 687 (1919), this court held: "If the owner of real estate contracts to borrow money to erect buildings thereon and gives a mortgage upon the real estate to secure the loan, which, by agreement, is to be advanced as the buildings progress, the lien of the mortgage begins upon the recording thereof. Under such agreement, the advancement of the money is not optional with the mortgagee, but must be advanced as the building has progressed."

The holding in Creigh was reaffirmed in Larson Cement Stone Co. v. Redlim Realty Co., 179 Neb. 134, 137 N. W. 2d 241 (1965). In Larson, we called attention to the fact that the Legislature had fixed the

priority of some optional advances at the time the mortgage was recorded. See § 76-238.01, R. S. Supp., 1963. Raymond refers to this statute as amended in 1974, but it is not applicable herein because we conclude the future advances in the present case were obligatory and not optional.

It is true, as Raymond argues, when it filed its mechanic's lien for record, defendants by the terms of their mortgage could have elected to declare the mortgagor in default. In that event it could have refused to make further advances on the construction loan. Raymond takes the position this right to declare a default negates any obligation to make future advances pursuant to the mortgage.

Among the options available to the mortgagee upon default are: (1) Declaration of the entire principal indebtedness due, or (2) the completion of construction. These options are usually not too satisfactory. We must recognize that a mortgagee may be obliged to continue advances for his own security, even though a mortgagee may have received actual notice of intervening liens. The mortgagee may still be under economic compulsion to make future advances, in order to protect his security in a partially constructed building. It would be a rare situation where a partially completed structure, under forced sale, would yield sufficient proceeds to pay off existing liens and encumbrances.

While we have discussed the issue raised by Raymond as to subsequent advances, we do not find it to be controlling herein. The terms of the agreement signed by Raymond to subordinate its liens to the construction loans are unqualified and controlling herein. Raymond knew, or should have known, that any construction loan would contain provisions for advances as the building progressed. Without specific language in the subordination agreement to the contrary, it must be deemed to contemplate future advances.

The judgment of the District Court is affirmed.

AFFIRMED.

CLINTON, J., concurs in the result.