COMMERCE SAVINGS LINCOLN, INC., A CORPORATION, APPELLEE, v. HUGH P. ROBINSON ET AL., APPELLEES, PAMELA MCNALLY AND STATE OF NEBRASKA, INTERVENORS-APPELLANTS.

331 N.W.2d 495

Filed March 4, 1983. No. 44459.

Richard A. Vestecka of Vestecka, Gorham & Tegtmeier, for appellant Pamela McNally.

Knudsen, Berkheimer, Beam, Richardson & Endacott, for appellee Commerce Savings.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

WHITE, J.

This is an action by appellee Commerce Savings Lincoln, Inc., to foreclose a mortgage on two tracts of urban real estate in the city of Lincoln, Lancaster County, Nebraska. Petitioners in intervention and appellants, Pamela McNally and the State of Nebraska, were permitted to intervene and urge the priority of a child support lien over the mortgage on one of the tracts. The trial court determined that the mortgage lien was a substitute purchase-money mortgage and therefore was entitled to priority over the child support lien, and ordered foreclosure. Pamela McNally, the holder of the child support judgment, and her assignee, the State of Nebraska, Department of Welfare, appeal. We affirm.

An understanding of the facts in this case is necessary. Pamela McNally and Marc McNally were divorced in November 1974 and the divorce decree ordered that Marc McNally pay child support and alimony. The evidence presented indicated that Marc failed to make a number of these payments and the same became a judgment lien attaching to any property owned by Marc McNally or any property which might subsequently be acquired by him. *McCord v. McCord,* 128 Neb. 230, 258 N.W. 474 (1935). Marc remarried shortly thereafter and on January 26, 1978, purchased the property at issue at 2504 T Street, Lincoln, Nebraska, from the Whitemans, sellers. The deed was kept in escrow until after the McNallys executed a mortgage to Mutual Savings Company. (Mutual Savings, the predecessor, has been succeeded by and is now known as Commerce Savings Lincoln, Inc., the appellee herein.)

On March 29, 1978, Marc McNally and his new wife, Deanna, signed a note to Mutual Savings for $22,250 and executed a mortgage to secure the note. The note stated that the funds were advanced to pur-

chase the T Street property. The deed conveying from the Whitemans to Marc and Deanna McNally and the mortgage given by the McNallys to Mutual Savings were both recorded on April 6, 1978.

On August 9, 1978, Marc and Deanna McNally conveyed the T Street property, which was still subject to the $22,250 mortgage, to Hugh P. Robinson and Penny L. Robinson, defendants and appellees herein. A month later, September 8, 1978, after buying the T Street property and assuming the existing McNally mortgage, the Robinsons executed a new blanket mortgage to Mutual Savings to consolidate in one note and mortgage their total obligation to Mutual Savings. The blanket note and mortgage were for $69,000 and covered a lot in Boulevard Heights, Lincoln, in addition to the T Street property. Mutual Savings had a preexisting mortgage on both tracts.

On September 11, 1978, Mutual Savings executed a release of the McNally mortgage on the T Street property, and on September 12, 1978, both the new blanket mortgage with the Robinsons and the release of the McNally mortgage were filed. No additional consideration was advanced by Mutual Savings to the Robinsons over the amount previously secured by mortgage on both tracts.

The Robinsons later became in default on the note and blanket mortgage and this foreclosure action was initiated. Among the named defendants were both the Robinsons and the McNallys. Pamela McNally intervened in the action, alleging a priority based upon her child support lien, and sought to obtain priority over the Commerce Savings (formerly Mutual Savings) mortgage.

It is the effect of the execution of the second mortgage by the Robinsons to Mutual Savings and the release of the McNally mortgage on the T Street property which gives rise to the controversy in question. A number of errors are assigned in the trial court's determination, the principal one being that the trial

court erred in not finding that the release of the T Street mortgage moved the preexisting judgment lien of Pamela McNally into a position of priority over the subsequent $69,000 blanket mortgage from the Robinsons to Mutual Savings. The appellants contest the finding that the mortgage given by Marc McNally and wife to Mutual Savings was, in fact, a purchase-money mortgage and, as such, entitled to priority over a judgment. *Omaha Loan & Bldg. Assn. v. Turk,* 146 Neb. 859, 21 N.W.2d 865 (1946); 59 C.J.S. *Mortgages* § 231 (1949). Appellants assert that the Robinson blanket mortgage was not a purchase-money mortgage because the recorded release extinguished both the McNally mortgage and its previous purchase-money status. Thus, appellants are arguing that a release of the previous mortgage and the execution of a new mortgage on a different or additional debt will discontinue the prior mortgage.

Commerce Savings maintains that the original mortgage to the McNallys was a purchase-money mortgage and that the new mortgage only continued the prior mortgage and its purchase-money status.

A purchase-money mortgage generally takes precedence over all existing and subsequent claims and liens against the mortgagor as to the property sold. *Omaha Loan & Bldg. Assn. v. Turk, supra.*

A purchase-money mortgage is given for the unpaid purchase money on a sale of land as part of the same transaction as the deed, and its funds are actually used to buy the land. 59 C.J.S. *Mortgages, supra.* It is clear that the McNallys originally had a purchase-money mortgage. First, the bank gave the mortgage so the McNallys could buy the T Street property. The note accompanying the mortgage stated that the funds were advanced for the purpose of purchasing the T Street property. Second, the mortgage appears to be part of the same transaction as the deed, considering that the deed was held in escrow and not filed until the mortgage had been

executed and filed. Finally, the funds were used to pay off the original sellers or the original sellers' obligation.

Since we find that the McNally mortgage was a purchase-money mortgage, this court applies the general rule, as it did in *Larson Cement Stone Co. v. Redlim Realty Co.*, 179 Neb. 134, 137 N.W.2d 241 (1965), that a release and a new mortgage will continue the original mortgage. In that case Meyer H. Feldman and Redlim Realty executed a note for $300,000 to the bank, secured by a real estate mortgage. Feldman sold his interest, and in order to release him from the original note, Redlim Realty signed a new note and mortgage for the same amount. The bank had released the original mortgage 1 day prior to the new mortgage being signed. Both the release and new mortgage were recorded on the same date. Intervening lienors argued that they had priority over the new mortgage as a result of the release. While not an issue, this court stated the effect of filing a release and accepting a subsequent mortgage: " ' "And where the holder of a senior mortgage discharges it [the mortgage] of record, and contemporaneously therewith takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien unless the circumstances of the transaction indicate this to have been his intention, or such intention upon his part is shown by extrinsic evidence." ' " *Larson Cement Stone Co. v. Redlim Realty Co.*, supra at 137, 137 N.W.2d at 244, quoting *Hadley v. Schow*, 146 Neb. 163, 18 N.W.2d 923 (1945).

In *Troyer v. Mundy*, 60 F.2d 818 (8th Cir. 1932), the father sold land to his son-in-law and took back a purchase-money mortgage for $11,000. When the father died the wife of the son-in-law received $6,800 of the mortgage and the father's other daughter received $3,700. To divide the estate, the sisters released the original $11,000 mortgage and took back

two mortgages of equal priority, one for $6,800 and one for $3,700. Thereafter, a third party was willing to advance $3,700 for the one sister's mortgage if he could have a first mortgage. The sisters filed releases and the son-in-law renewed the mortgages, executing a first mortgage to the third party for $3,700 and a second mortgage to his wife for $8,500, which was the amount then due. The son-in-law subsequently was declared bankrupt and the trustee in bankruptcy argued that he had priority because the wife was not entitled to the protection of a purchase-money mortgage.

The *Troyer* court found: "Being a purchase-money mortgage, given to secure a particular debt, it remained valid in equity for that purpose, whatever form the debt might assume, if it could be traced. . . . The lien of a purchase-money mortgage having attached, it was not displaced by any change in the form of the security. Defendant has clearly traced her debt and mortgage to the original purchase-money mortgage, and in equity her purchase-money mortgage interest should be sustained. . . . The subsequent dealings with the original mortgage have not changed the inherent nature of the mortgages taken in its place. They are to be regarded as purchase-money mortgages." *Troyer, supra* at 821.

The present case satisfies the elements necessary for the second mortgage to assume the status of the first. The parties intended the second mortgage to be a continuation of the first one. The real estate broker in charge of the transaction, William King, testified that both he and the loan officer intended that the new mortgage would keep the original mortgage on record. The release and the new mortgage were part of the same transaction. The substitute mortgage was executed September 8, 1978, the release September 11, 1978, and both were filed on September 12, 1978.

The rule that a release and new mortgage con-

tinue the original mortgage applies especially where the transaction "is done in good faith, in ignorance of the intervening lien, and without any intention to release the lien of the mortgage . . . ." 59 C.J.S. *Mortgages* § 281 (1949). King testified that Mutual Savings inadvertently released the mortgage and did not intend to release it. There is also no evidence that Mutual Savings knew of the child support judgment lien. Further, where the interest arose prior to the original mortgage, as did this lien, no reliance existed, and consequently the original mortgage will continue despite the accident or mistake. 59 C.J.S. *Mortgages* § 282 (1949).

The appellants argue that the recorded release is controlling. The cases cited by the appellants do not involve the release and renewal of a mortgage but only a legal effect of filing a release. Nebraska case law states that not the recorded release but rather the intent of the parties controls. *Larson Cement Stone Co. v. Redlim Realty Co.,* 179 Neb. 134, 137 N.W.2d 241 (1965).

Appellants also argue that since there was an additional debt, the rule of *Larson Cement* should not apply. However, an additional debt will discontinue the old mortgage only if the parties intended that. Most illustrative of this point is *United States v. Grover,* 227 F. 181, 184 (N.D. Cal. 1915), where the court stated: "Nor does the including in the new mortgage of an additional indebtedness not covered by the first discharge the lien of the old mortgage, so far as the indebtedness secured thereby remains unpaid, unless such be the purpose of the parties."

The change in the instant case of the interest rate did not change the intentions of the parties. Also, the difference in parties was irrelevant because the subsequent mortgagees were successors in interest and privies in estate with Mutual Savings, who held the mortgage originally.

Appellants also argue that the purchase-money mortgage should attach only to the amount of money

paid to others and not to the amount paid to Marc and Deanna McNally at the time of the original purchase. The evidence is to the contrary. The real estate agent who handled the original transaction where the McNallys acquired title to the property indicated that the money was immediately paid to the Whitemans for their equity in the property over and above the debts owed to others. There was no evidence that the McNallys received any money personally from the mortgage proceeds.

Appellants further assert that the receipt of the evidence with respect to the release, in the form of extrinsic evidence, violates the parol evidence rule. However, in *Larson Cement, supra,* we treated the release as a receipt and stated that, as a general rule, the cancellation of a mortgage on the record is not conclusive as to its discharge, or as to the payment of the indebtedness secured thereby. The parties' intention controls and can be shown by extrinsic evidence. See, also, *Peoples Bank v. Trowbridge,* 123 Neb. 312, 242 N.W. 647 (1932).

The evidence introduced in this case convinced the trial court and this court de novo that it was not the intention of Mutual Savings Company and its successor, Commerce Savings Lincoln, Inc., to release the T Street property from the effects of the mortgage, and the filing of the release was inadvertent. We are convinced that under our cases, notwithstanding the inadvertent filing of the release, the new mortgage continues the prior mortgage and its purchase-money mortgage status, provided the new mortgage is traceable to the original transaction, no intervening equity prohibits the priority of the original purchase-money mortgage, and the intentions of the parties do not indicate otherwise.

Other errors are assigned relating to whether or not Commerce Savings properly pleaded the priority of its purchase-money mortgage status. We will not comment further, other than merely observing that Commerce Savings put in issue by its petition

604

whether or not the lien it held was the first lien on the subject property. In doing so it placed in issue, for all practical purposes, any status that it may have had concerning the priority of its lien to all other liens. There are other errors assigned but the same are not meritorious and will not be discussed further.

On review de novo, we agree with the judgment of the trial court and it is hereby affirmed.

AFFIRMED.

CLINTON, J., not participating.