COMMERCIAL FEDERAL SAVINGS AND LOAN ASSOCIATION, A CORPORATION, APPELLEE, V. CHRISTIAN E. GRABENSTEIN ET AL., APPELLEES, WOODS INVESTMENT COMPANY, APPELLANT.

437 N.W.2d 775

Filed March 31, 1989.    No. 87-582.

John R. Doyle, of Doyle & Doyle Law Offices, for appellant.

Thomas M. White and Pamela S. Bloch, of Fitzgerald & Brown, for appellee Commercial Federal.

BOSLAUGH, SHANAHAN, and GRANT, JJ., and KNAPP and ROWLANDS, D. JJ.

BOSLAUGH, J.

This is a mortgage foreclosure case in which the issue is whether the mortgage of the plaintiff, Commercial Federal Savings and Loan Association, is prior to the mortgage of the defendant Woods Investment Company.

The record shows that on March 14, 1979, the mortgagors, Christian E. Grabenstein and Janet C. Grabenstein, executed a note and mortgage to the plaintiff to secure a loan of $84,800. This mortgage was recorded on March 15, 1979.

On February 26, 1979, the mortgagors had executed a note and mortgage to the defendant Woods Investment to secure a loan of $15,000. This mortgage was not recorded until May 1,

1979.

On September 2, 1980, the mortgagors executed a new note and mortgage to the plaintiff to secure a loan of $98,400. That mortgage was recorded on September 8, 1980, and a release of the March 14, 1979, mortgage was recorded the same day.

On August 4, 1986, the plaintiff commenced this action to foreclose the September 2, 1980, mortgage. The defendant Woods Investment's answer and cross-petition alleged that its mortgage recorded May 1, 1979, was a lien prior to that of the plaintiff's mortgage.

The plaintiff filed an amended petition which alleged that the plaintiff intended the September 2, 1980, mortgage to continue the original March 14, 1979, mortgage and that the lien of its mortgage was prior to that of the defendant Woods Investment.

The trial court found that the plaintiff's mortgage was a first lien and that the defendant Woods Investment's mortgage was a second lien, and granted foreclosure. The defendant Woods Investment has appealed and contends that the trial court erred in finding that the plaintiff's mortgage was the first lien and in finding that the allegations of the amended petition were true, when the plaintiff failed to offer or prove the original of the March 14, 1979, note.

With respect to the second assignment of error, Neb. Rev. Stat. § 25-832 (Reissue 1985) provides that in an action founded on a note, "a copy thereof must be attached to and filed with the pleading . . . ." An objection to the failure to attach a copy of the note to the petition must be raised by motion. *First Nat. Bank of Chadron v. Engelbercht*, 58 Neb. 639, 79 N.W. 556 (1899). The record fails to show that the defendant filed such a motion in the trial court.

The statute is intended for the protection of the debtor, and its purpose is to prevent a second action on the note by a third party. James C. Palmer, a vice president of plaintiff in charge of residential loan processing, testified that the plaintiff had been unable to find the original copy of the March 14, 1979, note and that it may have been returned to the borrowers. The evidence established that the original note was paid by the second note, and there is little danger of a suit by a third party on the first note. In any event, in *Boehmer v. Heinen*, 138 Neb. 376, 379,

293 N.W. 237, 239 (1940), we said, "The possession and production of the note for cancelation is not an absolute requirement as a basis for a decree."

The evidence supports the plaintiff's claim that the September 2, 1980, mortgage was intended to be a continuation mortgage. The loan to the Grabensteins was a construction loan, and the plaintiff only makes such loans if they are secured by a first mortgage. The additional funds advanced under the September 2, 1980, mortgage all could have been advanced under the terms of the March 14, 1979, mortgage. An origination fee was charged only as to the "new money." Before closing the loan, the plaintiff obtained title opinions. The title opinion dated August 4, 1980, shows the March 14, 1979, mortgage as the only unreleased mortgage of record. The reexamination opinion dated September 22, 1980, shows the September 2, 1980, mortgage as the only unreleased mortgage of record.

Palmer testified that if the plaintiff had known of the defendant Woods Investment's mortgage, the debt would have been paid from the proceeds of the loan or the mortgagors would have been required to produce evidence that it had been paid before the loan would have been closed.

Entering satisfaction of a mortgage and taking a new one, when designed by the parties to be merely a continuation of the first mortgage, and when the two acts are practically simultaneous or parts of the same transaction, are not an extinguishment of the mortgage, but a renewal thereof, and do not give priority to an intervening lien, especially where it is done in good faith and without any intention to release the lien of the mortgage. *Hadley v. Schow*, 146 Neb. 163, 18 N.W.2d 923 (1945).

Ordinarily, it is presumed that one must have intended to keep alive his mortgage title, where it was essential to his security against an intervening title; and this presumption applies although the party through ignorance of such intervening title may have actually discharged the mortgage and canceled the notes, and really intended to extinguish them. *Edney v. Jensen*, 116 Neb. 242, 216 N.W. 812 (1927). See, also, *Wyatt-Bullard Lumber Co. v. Bourke*, 55 Neb. 9, 75 N.W. 241

(1898).

In *Peoples Bank v. Trowbridge*, 123 Neb. 312, 315, 242 N.W. 647, 648 (1932), we stated:

> "Entering satisfaction of a mortgage and taking a new one, when designed by the parties to be merely a continuation of the first mortgage, and when the two acts are practically simultaneous or parts of the same transaction, [are] not an extinguishment of the mortgage, but a renewal thereof, and [do] not give priority to an intervening judgment or mortgage creditor of the mortgagor, especially where it is done in good faith, in ignorance of the existence of the intervening lien, and without any intention to release the lien of the mortgage."

See, also, *Union Loan & Savings Ass'n v. Simmons*, 131 Neb. 260, 267 N.W. 449 (1936).

In *Larson Cement Stone Co. v. Redlim Realty Co.*, 179 Neb. 134, 137 N.W.2d 241 (1965), the release and substitute mortgage were recorded on the same day. We held that the senior mortgage holder had not subordinated his security to an intervening lien unless the circumstances of the transaction indicated this was his intention or such intention was shown by extrinsic evidence. We said at 137-38, 137 N.W.2d at 244:

> " 'It is a general rule that the cancellation of a mortgage on the record is not conclusive as to its discharge, or as to the payment of the indebtedness secured thereby. And where the holder of a senior mortgage discharges it of record, and contemporaneously therewith takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien . . . .' "
>
> . . . .
>
> . . . " 'A mortgage is a mere security. It has no efficacy if unaccompanied by a debt or obligation. . . .' "

In *Commerce Savings Lincoln v. Robinson*, 213 Neb. 596, 331 N.W.2d 495 (1983), we held that the rule of the *Larson Cement Stone Co.* case applies where the substitute mortgage secured additional indebtedness. We said at 601-02, 331 N.W.2d at 498-99:

> The present case satisfies the elements necessary for the

second mortgage to assume the status of the first. The parties intended the second mortgage to be a continuation of the first one. The real estate broker in charge of the transaction, William King, testified that both he and the loan officer intended that the new mortgage would keep the original mortgage on record. The release and the new mortgage were part of the same transaction. The substitute mortgage was executed September 8, 1978, the release September 11, 1978, and both were filed on September 12, 1978.

The rule that a release and new mortgage continue the original mortgage applies especially where the transaction "is done in good faith, in ignorance of the intervening lien, and without any intention to release the lien of the mortgage . . . ." 59 C.J.S. *Mortgages* § 281 (1949). King testified that Mutual Savings inadvertently released the mortgage and did not intend to release it. There is also no evidence that Mutual Savings knew of the child support judgment lien. Further, where the interest arose prior to the original mortgage, as did this lien, no reliance existed, and consequently the original mortgage will continue despite the accident or mistake. 59 C.J.S. *Mortgages* § 282 (1949).

The appellants argue that the recorded release is controlling. The cases cited by the appellants do not involve the release and renewal of a mortgage but only a legal effect of filing a release. Nebraska case law states that not the recorded release but rather the intent of the parties controls. *Larson Cement Stone Co. v. Redlim Realty Co.*, 179 Neb. 134, 137 N.W.2d 241 (1965).

Appellants also argue that since there was an additional debt, the rule of *Larson Cement* should not apply. However, an additional debt will discontinue the old mortgage only if the parties intended that.

The judgment of the district court was correct, and it is affirmed.

AFFIRMED.