NEBRASKA STATE BANK, A CORPORATION, APPELLEE, V. WALTER E. PEDERSEN ET AL., APPELLANTS, DALE KNUDSEN ET AL., APPELLEES.

452 N.W.2d 12

Filed February 23, 1990.   No. 88-183.

500

Kurt A. Hohenstein, of Rager & Hohenstein, P.C., for appellants Pedersen et al.

Norris G. Leamer, of Leamer Law Office, for appellant Melvin Pedersen.

William Horneber, of Horneber Law Offices, for appellee Bank.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

The defendants Pedersen appeal the judgment of the district court which foreclosed the mortgage of the plaintiff, Nebraska State Bank (Bank) of South Sioux City, Nebraska. Defendants Pedersen assign as error that the district court erred in holding that the 1983 mortgage of the Bank was paramount to the recorded mortgages of defendants Pedersen, in construing the 1983 mortgage and note to be an obligation of LeRoy and Dee Ann Pedersen, in holding that the 1983 mortgage granted a mortgage over property owned by LeRoy and Dee Ann Pedersen, in allowing parol evidence to vary the terms of the written 1983 mortgage, and in deciding the case contrary to the evidence and the law. We affirm.

This litigation arose as the result of a series of mortgages executed by the defendants Walter E. and Elsie Pedersen to the Bank, with intervening conveyances of the mortgaged property to children of the Pedersens, LeRoy Pedersen, Melvin Pedersen, and Dorothy Pedersen, and to LeRoy's wife, Dee Ann, for what are assumed to be legitimate estate planning purposes.

The Bank filed a petition on January 22, 1987, requesting foreclosure on a mortgage covering the following parcels of land located in Dakota County:

> *Tract 1* —NE 1/4 NE 1/4 of Sec. 31, Twp. 29, R. 7 Except [certain described property]; also the NW 1/4 NW 1/4 SE 1/4 NW 1/4 and SW 1/4 NE 1/4 of Sec. 32, Twp. 29, R. 7 [less certain parcels of land no longer involved in this appeal]. *Tract 2* — NW 1/4 of Sec. 8, Twp. 28 N, R. 7 E. . . .
> *Tract 3*—SE 1/4 of Section 8, Twp. 28 North, R. 7 E. . . .
> *Tract 4*—[a] SE 1/4 of Section 31, Twp. 29, R. 7E; [b] W 1/2 SW 1/4 and SW 1/4 NW 1/4 of Sec. 32, Twp. 29, Range 7 E.; and [c] the SE 1/4 of Sec. 5, Twp. 28, Range 7 East . . . .

(Emphasis supplied.)

Although not part of the land covered by the mortgage

sought to be foreclosed, also mentioned by the parties is the following parcel of land: *Tract X* "-SW¹/₄ of Section 4, Township 28 North, Range 7 East . . . ."

At trial all parties stipulated that mortgages of The Federal Land Bank of Omaha are first and superior liens against Tract X, Tract 4, and Tract 3.

Evidence presented at the trial held on November 19, 1987, established the following facts.

On March 31, 1975, Walter and Elsie Pedersen gave the Bank a mortgage in the amount of $135,220, covering Tracts 1, 2, 3, 4, and X—1,090 acres. This mortgage was recorded on April 1, 1975.

On June 7, 1976, Walter and Elsie Pedersen gave the Bank a mortgage in the amount of $37,616, covering Tracts 1, 2, 3, 4, and X—1,090 acres. This mortgage was recorded on June 8, 1976.

Although the details are not clear from the record, at some time prior to December 21, 1976, Walter and Elsie Pedersen conveyed the "SW¹/₄ of Section 4, Township 28 North, Range 7 [Tract X]"—160 acres—to their son LeRoy Pedersen.

On December 21, 1976, Walter and Elsie Pedersen, in consideration of "one dollar and other valuable considerations," conveyed to LeRoy Pedersen the "SE¹/₄ of Section 5, Township 28 North, Range 7 [part (c) of Tract 4]" and the "SE¹/₄ of Section 8, Township 28 North, Range 7 [Tract 3]" by a warranty deed which noted the encumbrance of a first mortgage held by the Bank on the property.

That same day LeRoy Pedersen gave Walter Pedersen a promissory note in the amount of $56,000. Subsequently, on various dates, Walter Pedersen assigned unpaid principal on the promissory note to his daughter, Dorothy Pedersen, and his son Melvin Pedersen, each receiving a total assignment of $24,000 of unpaid principal, leaving a balance of $8,000 unpaid principal unassigned.

On December 21, 1976, LeRoy and Dee Ann Pedersen also gave Walter Pedersen the following real estate mortgages: (1) a mortgage in the amount of $38,400, covering part (c) of Tract 4; (2) a mortgage in the amount of $56,000, covering Tract 3; and (3) four mortgages each in the amount of $6,000 and each

covering Tract 3.

Walter Pedersen subsequently assigned two of the $6,000 mortgages to Dorothy Pedersen and two of the $6,000 mortgages to Melvin Pedersen.

The deed from Walter and Elsie Pedersen, all of the mortgages from LeRoy and Dee Ann Pedersen, and all of the assignments of mortgage from Walter Pedersen were recorded on January 6, 1978.

The inference to be drawn from Dee Ann Pedersen's testimony at trial is that the foregoing intrafamily transactions were part of the estate planning of Walter and Elsie Pedersen.

On January 16, 1979, Walter and Elsie Pedersen gave the Bank a real estate mortgage in the amount of $174,020.43, covering Tracts 1, 2, 3, 4, and X—1,090 acres. This mortgage was recorded on January 17, 1979. Unaware that Walter and Elsie Pedersen had conveyed away some of the land covered by the 1975, 1976, and 1979 mortgages because the July 10, 1978, financial statement provided to the Bank by Walter Pedersen indicated ownership of 1,090 acres, the Bank, on January 16, 1979, also executed a release of mortgage releasing the 1975 mortgage and the 1976 mortgage. The release of mortgage was recorded on January 17, 1979.

On January 16, 1980, Walter and Elsie Pedersen gave the Bank a real estate mortgage in the amount of $192,292.58, covering Tracts 1, 2, 3, 4, and X—1,090 acres. At this time the Bank was still unaware that Walter and Elsie Pedersen had conveyed away part of the property covered by the mortgage because the September 10, 1979, financial statement provided to the Bank by Walter Pedersen still indicated ownership of 1,090 acres. The mortgage was recorded on January 17, 1980.

The financial statement provided to the Bank by Walter Pedersen on September 9, 1980, indicated for the first time that Walter and Elsie Pedersen claimed ownership of only 930 acres, rather than 1,090 acres. Walter Pedersen told Randall Lanning, a vice president of the Bank handling Walter and Elsie Pedersen's loan file, that 160 acres (Tract X) had been deeded to LeRoy Pedersen. Due to the change in the number of acres, in January 1981 the Bank requested a title search. The title search revealed the 1976 deed conveying to LeRoy Pedersen Tract 3

and part (c) of Tract 4. Presumably the title search also revealed the mortgages from LeRoy and Dee Ann Pedersen to Walter Pedersen, covering Tract 3 and part (c) of Tract 4. Although there was reference to the assignments of the four $6,000 mortgages on the reverse side of the 1981 title search, Lanning failed to see this information.

On February 12, 1981, Walter and Elsie Pedersen gave the Bank a real estate mortgage in the amount of $248,802.81, covering Tracts 1, 2, 3, and 4, but not Tract X—930 acres. Although only Walter and Elsie Pedersen were listed as mortgagors in the grantor clause, the mortgage was signed by Walter, Elsie, LeRoy, and Dee Ann Pedersen. Lanning testified that the Bank requested the signatures of LeRoy and Dee Ann Pedersen because of the 1976 conveyance of Tract 3 and part (c) of Tract 4 to LeRoy Pedersen. Dee Ann Pedersen testified that Lanning told her that she and LeRoy would not be obligated on the debt if they signed the mortgage document. Although the signatures of Walter and Elsie Pedersen were acknowledged, the signatures of LeRoy and Dee Ann Pedersen were not. The mortgage was recorded on February 13, 1981.

On February 12, 1981, Walter and Elsie Pedersen also entered into a subordination agreement with the Bank regarding Tract 3 and part (c) of Tract 4. The subordination agreement stated that Walter and Elsie Pedersen were holders of real estate mortgages from LeRoy and Dee Ann Pedersen dated December 21, 1976, and recorded on January 6, 1978, in mortgage record book 86, pages 512-21 inclusive, of the real estate records of Dakota County, Nebraska. The agreement further stated that the Bank held a real estate mortgage of Walter and Elsie Pedersen, covering the above-described property in the amount of $248,802.81, dated February 12, 1981, and recorded on February 13, 1981. The agreement then provided that Walter and Elsie Pedersen subordinated their "ownership and contractual rights" in Tract 3 and part (c) of Tract 4 to the lien of the Bank's real estate mortgage. The lien of the Bank's mortgage was to be "senior and prior to the rights and heir of the mortgages recorded in Mortgage Record Book 86, page 512-521 inclusive, of the real estate records of Dakota County, Nebraska." Walter and Elsie Pedersen signed the

subordination agreement, but their signatures were not notarized. (It should be noted that pages 512-21 inclusive, of mortgage record book 86, cover not only the mortgages on Tract 3 and part (c) of Tract 4 from LeRoy and Dee Ann Pedersen to Walter Pedersen, but also the assignments of mortgages from Walter Pedersen to Melvin Pedersen and Dorothy Pedersen.)

On May 11, 1983, Walter and Elsie Pedersen gave the Bank a master note in the amount of $350,000. On that day Walter and Elsie Pedersen also gave the Bank a real estate mortgage in the amount of $350,000, covering Tracts 1, 2, 3, and 4, but not Tract X—930 acres. Although again only Walter and Elsie Pedersen were listed as mortgagors in the grantor clause, the mortgage was signed by Walter and Elsie Pedersen on May 11, 1983, and by LeRoy and Dee Ann Pedersen on May 16, 1983. The Bank requested that LeRoy and Dee Ann Pedersen sign the 1983 mortgage for the same reason they signed the 1981 mortgage, i.e., because of LeRoy Pedersen's ownership interest indicated on the title search. Dee Ann Pedersen testified that in 1983 she asked if the mortgage was the same as before in that she and LeRoy would not be obligated on the debt and that Lanning said that was correct. All signatures were acknowledged, and the mortgage was recorded on May 17, 1983.

Although it was the May 11, 1983, mortgage the Bank sought to foreclose, the Bank in its amended petition also requested "such other and further relief as the Court may deem just and equitable." All Pedersens were named as defendants to the action.

On December 18, 1987, the trial court rendered a judgment in favor of the Bank in the amount of $404,149.66 as of November 19, 1987, plus interest at 14.5 percent per annum accruing at a rate of $113.03 per day. The Bank's lien was subject only to the lienhold interest of The Federal Land Bank of Omaha and the unpaid real estate taxes. On March 8, 1988, the court issued an order of sale. On April 20, 1988, the sheriff's sale took place, and the land was sold to the Bank for $282,541.82. On May 10, 1988, the court issued an order confirming the sale.

Some preliminary observations and conclusions may be reached. Tracts 1 and 2 are owned by Walter and Elsie Pedersen, and the Bank is the only entity with a mortgage lien on these premises. Therefore, foreclosure in favor of the Bank was appropriate. Parts (a) and (b) of Tract 4 are also owned by Walter and Elsie Pedersen, upon which the Bank has a lien subject to the prior lien of The Federal Land Bank of Omaha. Tract 3 and Part (c) of Tract 4 are owned by LeRoy and Dee Ann Pedersen subject to the superior lien of The Federal Land Bank. The Bank claims a lien on these premises second only to The Federal Land Bank. Tract X appears to be owned by LeRoy and Dee Ann Pedersen and is not involved in this appeal.

Thus, at issue is the priority of the Bank's lien, if any, on Tract 3 and part (c) of Tract 4 as to all parties other than The Federal Land Bank, whose superiority is conceded.

LeRoy and Dee Ann Pedersen claim that because they are record title owners of Tract 3 and part (c) of Tract 4 and they are not parties to the 1983 mortgage because their names do not appear in the grantor clause, the Bank does not even have a lien on these premises. Although not alleged or requested in the amended petition, the Bank contends that the omission of the names of LeRoy and Dee Ann Pedersen from the grantor clause was a scrivener's error and requests that the document be reformed to conform to the intentions of the parties.

A separate suit in equity to reform a mortgage to correct a mutual mistake of the parties is not necessary. *Gurske v. Strate,* 165 Neb. 882, 87 N.W.2d 703 (1958). The reformation of a mortgage to correct a mutual mistake is incidental to the foreclosure of a mortgage and any and all equitable rights the mortgagee can show he or she has in it. *First Fed. Sav. & Loan Assn. v. Thomas,* 230 Neb. 465, 432 N.W.2d 222 (1988). A court may, although not requested by either party, reform an instrument to the ascertained intentions of the parties. *First Fed. Sav. & Loan Assn. v. Thomas, supra.*

Reformation may be granted to correct an erroneous instrument to express the true intent of the parties to the instrument. *Jelsma v. Acceptance Ins. Co.,* 233 Neb. 556, 446 N.W.2d 725 (1989). To overcome the presumption that the written instrument correctly expresses the intention of the

parties and obtain reformation, the evidence must be clear, convincing, and satisfactory. *Jelsma v. Acceptance Ins. Co., supra*. Clear and convincing evidence means and is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved. *Haines v. Mensen*, 233 Neb. 543, 446 N.W.2d 716 (1989).

Reformation may be ordered where there has been a mutual mistake or where there has been a unilateral mistake caused by the fraud or inequitable conduct of the other party. *Jelsma v. Acceptance Ins. Co., supra*. The Bank, here, argues no fraud and, hence, in order for reformation to be an appropriate remedy, there has to have been a mutual mistake. A mutual mistake exists where there has been a meeting of the minds of the parties and an agreement actually entered into, but the agreement in its written form does not express what was really intended by the parties. *Jelsma v. Acceptance Ins. Co., supra*. For purposes of reformation, mutual mistake is defined as a belief shared by the parties, which is not in accord with the facts. A mutual mistake is one common to both parties in reference to the instrument to be reformed, each party laboring under the same misconception about the instrument. *Jelsma v. Acceptance Ins. Co., supra*.

The fact that one of the parties denies that a mistake was made does not prevent a finding of mutual mistake, nor prevent reformation. *Omaha Door Co. v. Mexican Food Manuf. of Omaha*, 232 Neb. 153, 439 N.W.2d 776 (1989).

An erroneous omission or deletion, even by a scrivener, from an instrument intended to reflect the agreement of the parties is a mutual mistake and is contrary to the real intention and agreement of the parties. *Newton v. Brown*, 222 Neb. 605, 386 N.W.2d 424 (1986).

The evidence is clear and convincing that the parties intended LeRoy and Dee Ann Pedersen to be mortgagors and that their names were excluded from the grantor clause of the 1983 mortgage through a scrivener's error.

Looking at the 1983 mortgage, four individuals signed the mortgage, although only two of the four were listed as mortgagors in the grantor clause. Furthermore, the signatures of LeRoy and Dee Ann Pedersen were acknowledged. The

description of the land to be covered included parcels of land that everyone admits stood of record in the names of LeRoy and Dee Ann Pedersen—Tract 3 and part (c) of Tract 4. LeRoy and Dee Ann Pedersen were aware that the 1983 mortgage, like the 1981 mortgage previously executed, covered property they owned. In fact, in the 1981 mortgage Dee Ann had the Bank exclude from the mortgage Tract X *because that land was not being farmed by Walter*.

Lanning testified that the Bank intended by obtaining the signatures of LeRoy and Dee Ann Pedersen to have them as mortgagors and that the Bank required the signatures before extending additional credit to Walter and Elsie Pedersen in their farming operation.

Dee Ann Pedersen testified that she and LeRoy Pedersen signed the 1983 mortgage because Walter Pedersen called as he did in 1981. In 1981 she and LeRoy Pedersen signed the mortgage because Walter Pedersen called when he needed them to sign before he could start his spring farming. Dee Ann Pedersen did testify that she was told by Lanning that it would be the same as in 1981 and that she and LeRoy would not be obligated on the debt. Although Dee Ann Pedersen testified that she did not know the legal effect of signing the mortgage, she did admit that she understood that the purpose was for Walter and Elsie Pedersen to obtain financing.

There simply was no other reason for LeRoy and Dee Ann Pedersen to sign the mortgage other than to be mortgagors. Even if Lanning did tell LeRoy and Dee Ann Pedersen that they would not be obligated on the debt of Walter and Elsie Pedersen, that would not change the status of LeRoy and Dee Ann Pedersen as mortgagors. An individual need not be personally obligated for the debt of another in order to mortgage his or her property as security for the debt of another. See *Columbus Land, Loan & Bldg. Assn. v. Wolken*, 146 Neb. 684, 21 N.W.2d 418 (1946).

Since the discrepancy between the grantor clause and the signatures may be corrected by reformation, the issue as to ambiguity and parol evidence raised by the parties need not be addressed.

As reformation is granted to include LeRoy and Dee Ann

Pedersen as mortgagors, Tract 3 and part (c) of Tract 4 will be covered by the 1983 mortgage. Thus, the remaining issue to be resolved is the priority of the Bank's lien on these parcels of land.

The Bank contends that the conveyances, mortgages, and assignments of mortgages among the Pedersen family occurred and were recorded in 1976 through 1978, and therefore the provisions of Neb. Rev. Stat. §§ 36-401 and 36-403 (Reissue 1978), as those statutes existed prior to their repeal in 1980, are applicable to this case, as are this court's pre-1980 interpretations of those statutes. The Bank's conclusion is that conveyances to relatives which fall within §§ 36-401 and 36-403 are presumptively null and void as to preexisting creditors if the intent or object or effect of the conveyances is to hinder, delay, or defraud a preexisting creditor's recovery of its debt. Although we do not agree that the conveyances were fraudulent, it is not necessary for us to discuss that issue, as will be apparent.

As has been set out in some detail, there was a series of mortgage loans made by the Bank to Walter and Elsie Pedersen, beginning with the loan in 1975. A second loan was made in 1976. Then in 1979, Walter and Elsie Pedersen, without informing the Bank that they had conveyed some of the land covered in the earlier mortgages, gave the Bank a mortgage covering the same property as that covered in the 1975 and 1976 mortgages. On the day that the 1979 loan was made, unaware that Walter and Elsie Pedersen no longer owned Tract 3 and part (c) of Tract 4 covered by the 1975 and 1976 mortgages and the new 1979 mortgage, the Bank executed a release of mortgage releasing the 1975 and 1976 mortgages.

The issue is whether Tract 3 and part (c) of Tract 4 are still subject to the 1975 and 1976 mortgages despite the release of those mortgages by the Bank in 1979.

Recently, in *Commercial Fed. S. & L. Assn. v. Grabenstein*, 231 Neb. 647, 650, 437 N.W.2d 775, 777 (1989), the following well-established rule was reiterated:

> Entering satisfaction of a mortgage and taking a new one, when designed by the parties to be merely a continuation of the first mortgage, and when the two acts

are practically simultaneous or parts of the same transaction, are not an extinguishment of the mortgage, but a renewal thereof, and do not give priority to an intervening lien, especially where it is done in good faith and without any intention to release the lien of the mortgage.

See, also, *Hadley v. Schow*, 146 Neb. 163, 18 N.W.2d 923 (1945).

Under Nebraska case law the intent of the parties controls, not the recorded release. *Commerce Savings Lincoln v. Robinson*, 213 Neb. 596, 331 N.W.2d 495 (1983). Where the holder of a senior mortgage discharges it of record and contemporaneously takes a new mortgage, he or she will not, in the absence of paramount equities, be held to have subordinated his or her security to an intervening lien unless the circumstances of the transaction indicate this to have been his or her intention, or such intention upon his or her part is shown by extrinsic evidence. *Larson Cement Stone Co. v. Redlim Realty Co.*, 179 Neb. 134, 137 N.W.2d 241 (1965).

As to intention:

Ordinarily, it is presumed that one must have intended to keep alive his mortgage title, where it was essential to his security against an intervening title; and this presumption applies although the party through ignorance of such intervening title may have actually discharged the mortgage and canceled the notes, and really intended to extinguish them.

*Commercial Fed. S. & L. Assn. v. Grabenstein, supra* at 650, 437 N.W.2d at 777. Where an existing lien has been discharged and released by the holder and a renewal taken without knowledge of the existence of an intervening lien against the property, the mortgagee will be regarded as acting under such a mistake of fact as to entitle him or her to relief by a restoration of his or her priority if the rights of innocent parties are not involved. *Union Loan & Savings Ass'n v. Simmons*, 131 Neb. 260, 267 N.W. 449 (1936).

The elements necessary for the 1979 mortgage to assume the status of the 1975 and 1976 mortgages, i.e., good faith, ignorance of the intervening lien, and the lack of any intention

of releasing the lien of the mortgage, are satisfied in this instance. The rights of innocent parties are not involved in this case. The warranty deed from Walter and Elsie Pedersen to LeRoy Pedersen noted the encumbrance of the Bank's first mortgage. To hold that Tract 3 and part (c) of Tract 4 are still subject to the lien of the Bank prior to the intrafamily conveyances would put none of the children of Walter and Elsie Pedersen, including LeRoy Pedersen, in any worse position than they were in before.

Giving the 1979 mortgage the priority of the 1975 and 1976 mortgages, coupled with the reformation of the mortgage to include LeRoy and Dee Ann Pedersen as mortgagors, places the Bank in a position of priority as to all other liens except, of course, that of The Federal Land Bank.

The judgment of the district court is affirmed.

AFFIRMED.