613 P.2d 416
HOUSTON LUMBER COMPANY,
Plaintiff-Appellee,

v.

Jimmy Richard SKAGGS et al.,
Defendants-Appellants.

No. 12322.

Supreme Court of New Mexico.

June 18, 1980.

Sommer, Lawler, Scheuer & Simons, Thomas A. Simons, IV, Santa Fe, Ted L. Hartley, Lyle Walker, Fred Tharp, Jr., Richard M. Snell, Richard Rowley, II, Clovis, for defendants-appellants.

No appearance for plaintiff-appellee.

## OPINION

PAYNE, Justice.

On June 30, 1977, appellant Sandia Savings loaned Jimmy Richard Skaggs $37,000 for the construction of a home on Skaggs' property. Sandia Savings secured the loan by taking a construction loan mortgage on the property. Skaggs hired Jim Burnett, a contractor, to build the house, which he did with the aid of subcontractors and materialmen, including Houston Lumber Company.

On November 28, 1977, Sandia Savings simultaneously released the construction loan mortgage and filed a permanent loan mortgage. Houston Lumber and others had not been paid for all the labor and materials they had put into the project and instituted an action to foreclose their mechanic's and materialmen's liens. The trial court found that the advances made by Sandia Savings to Skaggs for payment of construction costs were not used for that purpose. The court further found that Sandia Savings never made any attempt to determine how the advances were being spent or whether construction debts were being paid. The trial court found:

At the time of the final disbursement of the construction loan, and at the time of the recording of the permanent loan, the defendant Sandia knew, or in the exercise of ordinary and reasonable care should have known, that none of the proceeds of the construction loan had been used for the purposes for which it was intended, and that each of the lien claimants was unpaid and had the right to perfect each separate inchoate lien against the property.

The court concluded that when Sandia Savings released the construction loan mortgage it ceased to be a recorded mortgage at that point and Sandia Savings lost its priority. The court also concluded that Sandia Savings was negligent in disbursing the construction funds and thereby had damaged the lien claimants.

■ We reverse the trial court and hold that Sandia Savings' senior priority status was not lost to junior lienholders by virtue of its release of the interim construction loan mortgage and simultaneous taking of a permanent mortgage. We adhere to the rule followed in other jurisdictions that the

cancelation of a mortgage on the record is not conclusive as to its discharge, or as to the payment of the indebtedness secured thereby. And *where the holder of a senior mortgage discharges it of record, and contemporaneously therewith takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien* unless the circumstances of the transaction indicate this to have been his intention, or such intention upon his part is shown by extrinsic evidence. (Emphasis added & citation omitted.)

*Hadley v. Schow*, 146 Neb. 163, 18 N.W.2d 923, 926 (1945), quoting from 33 A.L.R. 149 (1924). *See also Guleserian v. Fields*, 351 Mass. 238, 218 N.E.2d 397 (1966); *Larson Cement Stone Co. v. Redlim Realty Company*, 179 Neb. 134, 137 N.W.2d 241 (1965); *Kellogg Bros. Lumber v. Mularkey*, 214 Wis. 537, 252 N.W. 596 (1934).

The question is whether there is sufficient evidence to support the trial court's finding that "equities" exist in favor of Houston Lumber, and if they are sufficient to justify subordinating Sandia Savings' priority to Houston Lumber's junior claims.

The trial court made the following finding concerning "paramount equities":

The filing of the permanent loan mortgage released the construction loan mortgage. As to the priority of the various encumbrances, the equities in the present case are in favor of the lien claimants, who should be granted lien priorities superior to the permanent loan held by the defendant Sandia.

We hold that this finding was not sufficiently supported by the evidence.

■ The record indicates that the Sandia Savings mortgage attached prior to any work being done on the property. Houston Lumber had worked with the contractor prior to the Skaggs project and readily advanced him credit without a credit check. Additional credit was extended even though the contractor did not pay any of his monthly bills. Houston Lumber did not know that the construction loan had been released and replaced by a permanent financing arrangement. The majority of the work had been completed prior to the change of financing. There is no showing that Houston Lumber detrimentally relied on the release in any way. Therefore, we fail to see how the paramount equities favor Houston Lumber.

The issue of "paramount equities" was discussed in *Kellogg Bros. Lumber v. Mularkey, supra*. There the facts were essentially similar to those involved here, in that an existing mortgage was released and simultaneously renewed. The mechanic's and materialmen's liens had attached prior to the release and renewal of the first mortgage. The lienholder argued that the paramount equities existed in its favor because the mortgagee was negligent in failing to discover the existence of its mechanic's and materialmen's liens. The court rejected that argument and held that a negligent mortgagee would only be denied relief as against persons who had acquired superior

equities by making advances subsequent to and in reliance upon the satisfaction of the original mortgage. The court failed to see how the equities favored the lienholder inasmuch as it had not detrimentally relied upon the release of the mortgage nor would it be placed in any worse position if the priority of the released mortgage attached to the renewal mortgage. We agree with this reasoning.

The trial court found that Sandia Savings was negligent in its management of the loan—apparently for lending money to Skaggs who in turn contracted with Burnett, a builder heading for bankruptcy. Even if Sandia Savings were negligent this does not impose upon it any greater duty to ascertain Burnett's solvency and reliability than rests with Houston Lumber. Nor does it relieve Houston Lumber of any responsibility for its own credit practices. Houston Lumber may have been in a better position to have anticipated problems with the contractor as it had personal dealings with him.

Under these facts, it cannot be concluded that paramount equities favor Houston Lumber.

For these reasons, we reverse.

IT IS SO ORDERED.

FEDERICI and FELTER, JJ., concur.