622 P.2d 261

Danny **RODRIGUEZ**, Plaintiff-Appellee,

v.

Benjamin K. **HORTON**, Defendant-Appellant.

No. 4175.

Court of Appeals of New Mexico.

July 3, 1980.

William E. Snead, Ortega & Snead, P. A., Ronald T. Taylor, Albuquerque, for plaintiff-appellee.

Adams & Foley, P. C., Albuquerque, for defendant-appellant.

## OPINION

LOPEZ, Judge.

Rodriguez sued his attorney, Horton, for fraud and malpractice in connection with the settlement of a Workmen's Compensation case. The jury awarded Rodriguez $10,574.81 in compensatory and $25,000 in punitive damages, respectively. We affirm the lower court's judgment incorporating the jury awards.

In the spring of 1975, Rodriguez, who was not yet twenty, slipped in a hole, while working underground at his job as an electrician's assistant in the Kerr-McGee mines, thereby injuring his back. Eventually, he contacted Horton to represent him in his Workmen's Compensation claim against Kerr-McGee. The claim was settled, with court approval, for $8,000. Of that settlement, Rodriguez received only $2,440.19, the rest having gone for medical expenses and attorneys' fees. Rodriguez claimed that before he agreed to settle, Horton had told him that the $8,000 would be all his, and that he only learned of the distribution of the award from Horton after he had signed the settlement papers. Rodriguez also claimed that, since he had a good case, Horton should not have advised him to settle for so little; that Horton failed to advise him properly of his rights and options; and that Horton charged excessive fees.

The issues on appeal are: 1) whether there was substantial evidence to submit the issues of fraud, and malpractice to the jury; 2) whether the punitive damages should have been awarded; 3) whether the court erroneously allowed Rodriguez to collaterally attack the judgment in the Workmen's Compensation case; 4) whether certain evidence was improperly admitted; 5) whether the jury instructions were proper; 6) whether the rate of interest on the judgment should be 6 or 8 per cent.

1. *Substantial evidence.*

There was substantial evidence on all of the issues submitted to the jury. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate support for a conclusion. *Samora v. Bradford*, 81 N.M. 205, 465 P.2d 88 (Ct. App.1970).

The jury could have found Horton guilty of fraud. The elements of fraud are a false representation, knowingly or reck-

lessly made, with the intent to deceive, on which the other party acted to his detriment. *Sauter v. St. Michael's College*, 70 N.M. 380, 374 P.2d 134 (1962). Fraud must be established by clear and convincing evidence, *Snell v. Cornehl*, 81 N.M. 248, 466 P.2d 94 (1970), but it is for the factfinder, not the appellate court, to weigh the evidence. *Duke City Lumber Co. v. Terrel*, 88 N.M. 299, 540 P.2d 229 (1975). Although Horton claimed that he had discussed the breakdown of the Workmen's Compensation settlement with Rodriguez prior to the signing of the settlement papers in Judge Traub's office on June 18, 1976, Rodriguez testified to the contrary. The determination of whether a false representation was made belongs to the jury. *Sauter.*

■ The jury also could have found Horton guilty of malpractice. Horton argued that there was not substantial evidence that Rodriguez was injured by the Workmen's Compensation settlement, since Rodriguez had a poor case and would not have obtained much in court. He argued there were notice and medical evidence problems with Rodriguez's suit. He also felt the failure of anyone to find the hole in the mine where Rodriguez slipped significantly weakened the case. He maintained there was insufficient evidence of injury to Rodriguez for the jury to have found him liable.

We do not agree. The evidence at trial indicated Rodriguez had a strong case. A report filed with the Bureau of Labor showed that Rodriguez had notified Kerr-McGee of the accident on the day it happened. In his deposition, Lowell McKim, attorney for Kerr-McGee, said that he did not believe notice was a problem. At least three physicians, a psychiatrist, a psychologist, and a vocational rehabilitation specialist could have testified on Rodriguez's behalf. Dr. Harvey, an orthopedic surgeon who saw Rodriguez over the course of thirteen months, wrote a report that Rodriguez suffered a 20% physical impairment of the entire body. At trial, he testified that Rodriguez was totally disabled from doing any work for which he was qualified. Dr. Altman, another specialist, estimated that Ro-

driguez had a 25% permanent partial impairment. The report of Dr. Seelinger, a neurologist, contained objective evidence of Rodriguez's injury. Horton never obtained the report of Dr. Herman, a psychologist, which indicated that Rodriguez's depression resulted from his physical condition, not vice versa. The psychiatrist, Dr. McCarthy, and the vocational rehabilitation specialist, Mr. Mackler, agreed that Rodriguez was disabled; the latter believed he was totally so. Lastly, the failure of Kerr-McGee to find the hole where Rodriguez slipped, which was in a mine tunnel, and covered with water, could not have the significance Horton attributed to it. There was substantial evidence that Horton's handling of the case was the proximate cause of pecuniary injury to his client, and that the Workmen's Compensation benefits to which Rodriguez was entitled equaled or exceeded the jury award of $10,000 compensatory damages.

■ There was substantial evidence of malpractice before the jury. To establish legal malpractice, the testimony of another attorney as to the applicable standards of practice is usually necessary. *See, Sanders v. Smith*, 83 N.M. 706, 496 P.2d 1102 (Ct. App.), *cert. denied*, 83 N.M. 698, 496 P.2d 1094 (1972). A lawyer holding himself out to the public as specializing in an area of the law must exercise the same skill as other specialists of ordinary ability specializing in the same field. *Wright v. Williams*, 47 Cal.App.3d 802, 121 Cal.Rptr. 194 (1975). William Carpenter, an attorney in Albuquerque with knowledge of Workmen's Compensation cases, testified for Rodriguez. He said that the following acts by Horton were beneath the standard of care applicable to a Workmen's Compensation lawyer: 1) to advise Rodriguez, in this fact situation, to settle for $8,000, including past and future medical expenses and attorney's fees; 2) to fail to advise Rodriguez that he might recover medical expenses incurred as the result of the malpractice of a chiropractor whom he consulted about his back injury; 3) to encourage his client to settle the Workmen's Compensation case by telling

him that he would receive $5,000 from a pending Supplemental Social Security claim and $5,000 from his malpractice suit against the chiropractor, when this money was, in fact, not forthcoming; 4) to fail to advise his client of his rights under the Workmen's Compensation Act to rehabilitation, future medical expenses, and to periodic six month re-evaluations of his case; and 5) to allow for only $500 for future medical bills in the settlement when there was evidence he thought the future bills could be as much as $5,000. Other possible acts of malpractice were to write letters to some of the doctors who cared for his client asking them to reduce their fees and stating that he had reduced his fees, when, in fact, he had not done so; and to misrepresent the medical expenses and attorney's fees to the judge at the time of the settlement.

## 2. Punitive damages.

█ The jury properly awarded punitive damages in this case. Punitive damages may be awarded when the conduct of the wrongdoer is maliciously intentional, fraudulent, or committed with a wanton disregard of the plaintiff's rights. *Loucks v. Albuquerque National Bank*, 76 N.M. 735, 418 P.2d 191 (1966). They are awarded as punishment of the offender. *Bank of New Mexico v. Rice*, 78 N.M. 170, 429 P.2d 368 (1967). From the evidence at trial, the jury could have concluded that Horton acted in wanton disregard of Rodriguez's rights. Besides misleading his client in the $8,000 Workmen's Compensation settlement, Horton settled without authorization Rodriguez's malpractice claim against the chiropractor who treated him after the back injury. He also charged excessive fees for miscellaneous services, claiming he or his associate spent over twenty hours at $50 an hour for letters to a few creditors, advice on how to obtain Social Security and welfare benefits, preparation on a simple divorce which was never filed, and a Municipal Court proceeding involving a first offense DWI charge.

█ Even if punitive damages were permissible, Horton claims they are exces-

sive. We disagree. As long as the amount of the punitive damages is not so unrelated to the actual damages proven as to plainly manifest passion and prejudice, the amount is left to the jury's sound discretion, based on the circumstances of each case. *Christman v. Voyer*, 92 N.M. 772, 595 P.2d 410 (Ct.App.1979). The relation of the punitive damage award to the actual injury must be reasonable, considering the "enormity" of the offense. *Marler v. Allen*, 93 N.M. 452, 601 P.2d 85 (Ct.App.1979). The punitive damages in the case before us are reasonable, considering the circumstances, and are not so unrelated to the compensatory damages as to show passion and prejudice on the part of the jury.

## 3. Collateral attack.

█ The court did not erroneously allow Rodriguez to collaterally attack the judgment in the Workmen's Compensation case, since no such attack was made. In a malpractice action alleging the negligence of an attorney in settling a claim for a small amount, the reasonableness of the settlement must necessarily be examined. *See generally, George v. Caton*, 93 N.M. 370, 600 P.2d 822 (Ct.App.), *cert. quashed*, 93 N.M. 172, 598 P.2d 215 (1979).

## 4. Admissibility of evidence.

█ Horton asserts that evidence concerning Rodriguez's treatment by the chiropractor as a result of his injury in the Kerr-McGee mine was improperly admitted. The chiropractor inadvertently burned Rodriguez's back while treating it, thereby causing Rodriguez to be hospitalized and incur additional expenses. Rodriguez tried to sue the chiropractor, who had no insurance and went bankrupt, for malpractice. This evidence was relevant in connection with the malpractice claim against Horton because Rodriguez should have been informed of the significance of the fact that the chiropractor had no insurance, and because Horton should have tried to get Workmen's Compensation benefits for the medical bills. *See*, Section 52–1–49(B) (N.M.S.A.1978); *Security Insurance Co. v.*

*Chapmann*, 88 N.M. 292, 540 P.2d 222 (1975). The other evidence to which Horton objected was properly admitted as expert testimony. N.M.R.Evid. 702, N.M.S.A.1978.

5. *Jury instructions.*

■ Horton maintains that his defense of "account stated" should have been submitted to the jury. This argument is fallacious because where there is fraud in the execution of a contract, as for example when the instrument is signed under a mistaken belief as to its contents, the contract is null and void. *McLean v. Paddock*, 78 N.M. 234, 430 P.2d 392 (1967). Thus the account on which Horton relies for his defense does not exist.

The other instructions submitted to the jury by the court and objected to by Horton properly set forth the law as applied to this case. There was substantial evidence of unintentional or negligent misrepresentation, of malpractice, and of willful or wanton misconduct justifying the imposition of punitive damages to instruct the jury on these issues. The court properly refused the defendant's instructions.

6. *Interest rate on the judgment.*

■ The court's ruling that the judgment should bear interest at the rate of 8% per annum is in accordance with § 56–8–4, N.M.S.A.1978. Horton's reading of § 56–8–3, N.M.S.A.1978 to limit the rate on judgments to 6% is incorrect. The latter statute reads in part:

> The rate of interest, in the absence of a written contract fixing a different rate, shall be 6% per annum, in the following cases:
>
> .   .   .   .   .
>
> B.  on judgments and decrees for the payment of money *when no other rate is expressed* ;

.   .   .   .   .

(Emphasis added.)

This statute is applicable when no interest rate is expressed in the judgment. Since the lower court ordered an interest rate of 8% on the judgment, § 56–8–3 does not apply. Section 56–8–4 is the statute which limits the interest rates when expressed in a judgment.

■ It provides:

Judgments and decrees for the payment of money shall draw the same rate of interest as the contract on which they are rendered, and such rate, if other than 8% shall be expressed in the judgment or decree,

.   .   .   .  .   .

This section limits the judicially imposed interest rate to 8% if there is no rate expressed in the contract. The 8% rate ordered on the judgment by the lower court is proper.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

WALTERS and ANDREWS, JJ., concur.