862 P.2d 1243

**RESOLUTION TRUST CORPORATION, as receiver for Security Federal Savings and Loan Association, a federal savings and loan association, Plaintiff–Appellant and Cross–Appellee,**

v.

**Charles E. BARNHART, Defendant–Appellee and Cross–Appellant.**

**No. 13043.**

Court of Appeals of New Mexico.

Aug. 30, 1993.

Certiorari Denied Nov. 3, 1993.

David A. Rammelkamp, Nicholas F. Persampieri, Poole, Kelly & Ramo, P.C., Albuquerque, for plaintiff-appellant and cross-appellee.

Stanley N. Hatch, Daniel W. Lewis, Hatch, Beitler, Allen & Shepherd, P.A., Albuquerque, for defendant-appellee and cross-appellant.

## OPINION

BIVINS, Judge.

Plaintiff, Resolution Trust Corporation (RTC), as receiver for Security Federal Savings and Loan Association (Security Federal), and Defendant, Charles E. Barnhart (Barnhart), pursue separate appeals from the trial court's decision following a bench trial. Security Federal filed suit against Barnhart for legal malpractice alleging, among other things, that: (1) he failed to properly represent Security Federal in bankruptcy proceedings, including an ad-

verse foreclosure against property belonging to a debtor and on which Security Federal held a mortgage; and (2) he failed to submit a timely claim on Security Federal's title insurance policy covering the property, which First American Title Company (First American) had issued. RTC contends that the trial court erred in determining that Barnhart's negligence was not the proximate cause of any damages Security Federal may have suffered and in refusing to award damages. In his cross-appeal, Barnhart argues that: (1) the trial court erred in finding that he was negligent; and (2) the findings of negligence were not supported by substantial evidence.

We affirm the determination that Barnhart was negligent in failing to represent Security Federal in the adverse foreclosure proceeding and in failing to give timely notice to First American on Security Federal's insurance policy. We reverse the determination that Barnhart's negligence was not a proximate cause of any damages. We remand for the entry of a judgment in favor of RTC for damages resulting from Barnhart's negligence in failing to represent Security Federal in the adverse foreclosure proceeding. We also remand for the entry of findings of fact and conclusions of law determining the basis, if any, of Security Federal's negligence in failing to timely notify First American of the adverse claim and, if any negligence is found, to apportion liability on this issue.

FACTS

The legal malpractice action initiated by Security Federal against Barnhart grew out of a series of loans from Security Federal to Joe W. and Mary Lee Priestley, husband and wife (the Priestleys). In May 1976, Security Federal loaned $100,000 to the Priestleys and took a mortgage as security on real estate the Priestleys owned. The mortgage was duly recorded. In August 1977, the Priestleys executed a revocable trust agreement (the Trust) naming Joe W. Priestley as trustee, and both Joe W. and Mary Lee Priestley as settlors and beneficiaries of the Trust. The Trust specified that the Priestleys would retain a life estate in the assets of the Trust, and the Trust contained a spendthrift clause purporting to restrain transfer or assignment of the interests of the beneficiaries in order to satisfy the claims of any creditors. The Trust authorized the trustee to grant mortgages on the trust corpus.

The Priestleys conveyed real property to the Trust in August 1977, including the real estate they had conveyed to Security Federal as security for the 1976 loan. The Priestleys remained in possession and occupancy of the real property quitclaimed to the Trust. In December 1977, the Priestleys negotiated a second loan from Security Federal for $24,800. As security for the loan, Joe W. Priestley, as trustee, and Mary Lee Priestley, individually, gave a mortgage to Security Federal on property which was subject to the Trust. This mortgage was also duly recorded. Security Federal made a third loan in the sum of $200,000 to the Priestleys in March 1982. As security for this loan, the Trust also executed and delivered to Security Federal a mortgage on property in the Trust. This property was the same property that had secured the 1976 and 1977 loans. The mortgage was signed by Joe W. Priestley, as trustee, and was recorded in March 1982. As part of this transaction, Security Federal gave releases to the Priestleys for the 1976 and 1977 mortgages. From the proceeds of the 1982 loan, $94,266.84 was applied against the outstanding balance of the 1976 loan, and $24,294.53 was applied against the balance of the 1977 loan. The amount, interest rate, and term of the 1982 loan differed from the provisions of the prior loans, and the mortgagor of the 1982 mortgage was not the same as of the prior mortgages.

Security Federal obtained a mortgagee's title insurance policy from First American to insure the priority of its lien on the property described in the 1982 mortgage. The title policy indicated that the 1982 mortgage issued to Security Federal was a first lien on the mortgaged property. On April 18, 1979, however, the Bank of New Mexico (Bank) had obtained a judgment against Joe W. Priestley, individually, and others in the amount of $127,595.06, plus

interest, attorney fees, and costs in the sum of $12,759. Neither the Trust nor Security Federal were named as parties to this action. In April 1979, the Bank recorded a transcript of this judgment. In September 1983, the Bank assigned its judgment to Joe Roberts (Roberts) for consideration. In December 1983, the Priestleys filed for Chapter 11 bankruptcy.

Before issuing its title insurance policy for the 1982 mortgage, First American conducted a title search and noted the 1979 transcript of judgment. The title policy, however, did not list the judgment as an exception to the policy. When Security Federal made the 1982 loan to the Priestleys, it had no actual knowledge of the 1979 judgment.

Sheryl Snair, Security Federal's collection manager, testified that she had authority to refer matters to Security Federal's attorneys for handling and, after the Priestleys defaulted on the 1982 loan, she sent the Priestley loan file to Barnhart for the institution of foreclosure proceedings. When Roberts' claim in bankruptcy was filed in December 1983, naming Security Federal as an interested party, those pleadings also were sent to Barnhart. At all material times, Barnhart served as general counsel for Security Federal and received a monthly retainer, plus other fees, for the time spent representing Security Federal on its legal matters.

After the 1982 loan became uncollectible, Security Federal filed a legal malpractice action against Barnhart alleging, among other things, that Barnhart negligently failed to represent it in the Priestley bankruptcy proceedings and negligently failed to file a timely claim on Security Federal's title insurance policy issued by First American. Barnhart denied any negligence.

Following a bench trial on the merits, the trial court adopted findings of fact and conclusions of law, including findings that:

34. Security Federal intended to create a new indebtedness and to extinguish the earlier [Priestley] debt and priority by accepting the 1982 mortgage on materially different terms than those of the 1976 and 1977 mortgages.

. . . .

41. The Priestley bankruptcy was referred by Security Federal to Barnhart for legal representation of Security Federal's interests in that proceeding.

42. Barnhart accepted and agreed to represent Security Federal in the Priestley bankruptcy.

. . . .

46. Barnhart agreed to represent Security Federal in the Roberts adversary foreclosure proceeding.

47. A lawyer possessing the skill and knowledge ordinarily possessed by attorneys under circumstances similar to Barnhart's would file an entry of appearance or other responsive pleading to the Roberts Complaint within the response time allowed by the Rules of Bankruptcy Procedure.

48. Barnhart did not file an answer or responsive pleading to the Roberts Complaint within the response time required by the Rules of Bankruptcy Procedure.

49. Barnhart had no justification or excuse for failing to file an answer or a responsive pleading to the Roberts Complaint within the time required by the Rules of Bankruptcy Procedure.

. . . .

51. The Roberts proceeding was an adverse claim to the first position of Security Federal's mortgage covering Tracts 1 and 2.

. . . .

54. Barnhart failed to submit a claim to First American on the adverse claim of Roberts in the adversary foreclosure proceeding in accordance with the terms and conditions of the First American title [insurance] policy.

. . . .

56. Barnhart was without justification or excuse in failing to provide notice of the Roberts adversary proceeding to First American or advising his client to do so.

. . . .

72. Security Federal never instructed Barnhart not to enter an appearance, or

**388**

file an answer or a responsive pleading to the First Amended Complaint for Foreclosure filed by Roberts.

73. Security Federal did not instruct Barnhart not to give timely, written notice to First American Title Company.

The trial court also found that Barnhart breached his duty as an attorney to Security Federal to exercise the skill ordinarily required of attorneys in such cases and, as a result, default judgment was entered in the Roberts proceeding against Security Federal, adjudging its mortgage to be inferior to Roberts' judgment lien. Although it found that Barnhart was negligent in representing Security Federal, the trial court found that there was "no evidence that Security Federal would have prevailed in its motion to set aside the default or in its request for coverage under the title [insurance] policy if the motion and request were made in October or November of 1985," when new counsel was employed by Security Federal.

The trial court concluded, among other things, that Barnhart's breaches of duty in Roberts' adversary proceedings constituted negligence and that Security Federal was not contributorily negligent in connection with Barnhart's failure to defend its interests in this proceeding, but that "Barnhart's negligence was not a proximate cause of Security Federal's losses." The trial court also concluded that although Barnhart's breach of duty in failing to give proper notice of claim to First American constituted negligence, Security Federal "failed to exercise ordinary care to protect its rights under the title [insurance] policy," and "[n]either Barnhart's negligence nor Security Federal's negligence was a proximate cause of Security Federal's loss." Based on these findings and conclusions, the trial court concluded that Security Federal suffered no loss as a consequence of Barnhart's negligent acts or omissions.

We first address Barnhart's contentions on cross-appeal that the trial court erred in finding him negligent. We next address RTC's challenge of the trial court's determination that Barnhart's failure to represent Security Federal in the bankruptcy foreclosure proceedings did not cause it any loss, and that Barnhart's failure to timely notify First American of Roberts' adverse claim did not cause any loss.

### BARNHART'S NEGLIGENCE

■ In his cross-appeal, Barnhart challenges the trial court's findings that he was negligent in representing Security Federal in the Roberts' adverse foreclosure proceedings and in failing to timely notify First American of the adverse claims against the policy. Barnhart asserts that the trial court committed reversible error because it failed to recognize his legal duty to follow Security Federal's explicit instructions not to act in the Priestley bankruptcy proceedings or to file a claim against the title policy. In a malpractice action against an attorney, the plaintiff carries the burden of proving: (1) the existence of an attorney-client relationship; (2) the attorney's failure to exercise the degree of knowledge or skill ordinarily possessed by others in his or her profession similarly situated; and (3) the attorney's negligence was the proximate cause of loss to the plaintiff. *See Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 162–63, 848 P.2d 1086, 1089–90 (Ct.App.), *cert. denied*, 115 N.M. 60, 846 P.2d 1069 (1993); *George v. Caton*, 93 N.M. 370, 373, 376, 600 P.2d 822, 825, 828 (Ct.App.), *cert. quashed*, 93 N.M. 172, 598 P.2d 215 (1979); *see also First Nat'l Bank v. Diane, Inc.*, 102 N.M. 548, 553, 698 P.2d 5, 10 (Ct.App. 1985); *Rodriguez v. Horton*, 95 N.M. 356, 359, 622 P.2d 261, 264 (Ct.App.1980), *cert. quashed*, 95 N.M. 426, 622 P.2d 1046 (1981). Proof of legal malpractice usually requires the testimony of another attorney to establish the applicable standards of practice. *Rodriguez*, 95 N.M. at 359, 622 P.2d at 264.

■ In arguing that the trial court erred in finding him negligent, Barnhart emphasizes his testimony indicating that two successive chief executive officers of Security Federal orally instructed him not to take action on the Roberts' adverse foreclosure proceeding and told him not to notify First American of the adverse claim against the title policy. He argues that this testimony

was uncontradicted and, thus, was binding on the trial court. Our review of the record indicates the existence of substantial evidence on which the trial court relied and which supports the court's findings as to Barnhart's legal malpractice. The evidence shows that after the Priestleys defaulted on the 1982 note, Sheryl Snair sent the Priestley loan file to Barnhart and, according to the usual practice, he was expected to proceed with appropriate legal action. Barnhart told Jane Finch, Snair's assistant, that he would file foreclosure proceedings if the debt was not promptly brought current. Barnhart was a member of Security Federal's board of directors and the board followed the practice of reviewing all delinquent loans at its regular monthly meetings. Barnhart never informed Snair or the other board members that he was not representing Security Federal in the Priestley bankruptcy matters or that he had not given timely notice of the adverse claim to First American. The record also indicates that Barnhart told the board that he was taking care of the Priestleys' loan problems.

There is no record that Barnhart ever sent Security Federal any letter or memo confirming his alleged instructions not to act in either of these matters or that he advised Security Federal personnel of the hazards of not taking appropriate legal action. Three attorneys, Hunter Geer, Paul Fish, and Gerald Cole, testified concerning the standard of care Barnhart owed Security Federal. In light of this evidence, the trial court was not bound to accept Barnhart's testimony that he was instructed by the executive officers of Security Federal not to proceed with representing Security Federal in the adverse foreclosure proceeding or the claim on the title policy. *See Samora v. Bradford*, 81 N.M. 205, 208, 465 P.2d 88, 91 (Ct.App.1970) (trial court need not accept testimony if, inter alia, it concerns transaction surrounded by suspicious circumstances or is subject to reasonable doubt under facts of case).

■ Barnhart testified that Security Federal's board of directors voted not to notify and demand a defense from First American when its priority position was threatened in Roberts' adverse foreclosure proceeding. Clarence Ashcraft, a member of the board of directors, testified that Barnhart was supposed to file a lawsuit against First American because of Roberts' legal claim. John Matthews, Robert Brown, and Ashcraft, who were officers or employees of Security Federal, each testified that Barnhart was supposed to notify title insurance companies of any adverse claims. Paul Fish, an attorney, testified that in his experience an attorney representing a creditor should give notice to the title company of an adverse claim. Barnhart admitted that this also was his usual practice. Under the record before us the challenged findings are supported by substantial evidence. The fact that other evidence existed which would have supported different findings does not require reversal. It is the duty of the trial court to resolve all disputed factual issues. *Roybal v. Morris*, 100 N.M. 305, 311, 669 P.2d 1100, 1106 (Ct.App.1983). We find this issue to be without merit.

*NEGLIGENCE BASED ON FAILURE TO REPRESENT SECURITY FEDERAL IN THE ADVERSE FORECLOSURE PROCEEDING AS A PROXIMATE CAUSE OF DAMAGES*

■ Resolution of this issue involves the question of whether the trial court misapplied the equitable doctrine of reinstatement of liens. Under this doctrine, where a senior mortgagee discharges its mortgage of record and contemporaneously takes a new mortgage, the senior mortgagee's lien is not subordinated to intervening liens in the absence of (1) evidence of an intent to subordinate, or (2) paramount equities in favor of junior lienholders that justify subordinating the senior mortgagee's lien. *Houston Lumber Co. v. Skaggs*, 94 N.M. 546, 547, 613 P.2d 416, 417 (1980). Although the language in *Houston Lumber* implies two distinct tests that might be employed to overcome the presumption, we note that the analysis of the facts in that case focused exclusively on equitable considerations. This focus seems to be the preferred analysis.

As stated in George E. Osborne, *Handbook on the Law of Mortgages* Section 282 (2d ed. 1970):

> [T]he majority of cases hold that one who advances money to discharge a prior lien in reliance upon getting a first mortgage ... is entitled to subrogation to the prior lien as against the holder of an intervening lien of which he was ignorant.... To permit the later encumbrancer to advance under these circumstances would give him a windfall advantage at the expense of the justifiable expectations of the lender, and this is properly regarded as unjust enrichment.

*Id.*, at 571–72. Although reinstatement of the lien is not strictly speaking the same as subrogating the rights of one party for another, the same rationale has been applied when the subsequent lender is the holder of the first mortgage who releases it anticipating that the subsequent mortgage will retain the first mortgage's priority. *See* 1 George E. Palmer, *The Law of Restitution* § 3.6 (1978).

■ With the above authorities in mind, we understand *Houston Lumber* to stand for the proposition that, without some explicit indication that the senior mortgagee intended to subordinate its lien, the courts should be guided by equitable considerations in determining the priority of liens in these situations. These considerations include whether the senior lienholder had actual knowledge of the intervening lien and whether the intervening lienholder would be unjustly enriched by advancing its lien in priority. *See* Osborne, *supra,* § 282; Palmer, *supra,* § 3.6.

■ The trial court in this case found that Security Federal, in making the 1982 loan to the Priestleys, "intended to create a new indebtedness and to extinguish the earlier debt and priority by accepting the 1982 mortgage on materially different terms than those of the 1976 and 1977 mortgages." The 1982 mortgage · differs from the 1976 and 1977 mortgages in the amount of the mortgage principal, the interest rate, and the term of the mortgage. As we interpret *Houston Lumber*, however, these differences do not sufficiently indicate Security Federal's intent to subordinate its lien so as to overcome the presumption that Security Federal did not intend to subordinate its prior liens. *See Young v. Shauer*, 73 Iowa 555, 35 N.W. 629 (1887) (new mortgage for $600 regarded as mere renewal of old mortgage for $400 and superior to intervening judgment lien); *Commercial Fed. Sav. & Loan Ass'n v. Grabenstein*, 231 Neb. 647, 437 N.W.2d 775, 777 (1989) (new mortgage for $98,000 intended to be continuation of the old mortgage for $84,000). *See generally* Annotation, *Discharge of Mortgage and Taking Back of New Mortgage as Affecting Lien Intervening Between Old and New Mortgages*, 98 A.L.R. 843, 845–47 (1935) [hereinafter *Discharge of Mortgage*].

The 1982 mortgage also differs from the 1976 and 1977 mortgages in that Joe Priestley as trustee executed the 1982 mortgage while each of the previous mortgages had been executed by at least one of the Priestleys individually. We are not persuaded that this difference, even when combined with those listed above, evidences an intent to subordinate Security Federal's lien. In this regard, we note the trial court made findings that the documents submitted for the loan treated the trust and the Priestleys in their individual capacities interchangeably, and "[t]he officers and directors of Security Federal made no distinction between Priestley individually and the Trust." *See Clackamas County Bank v. IRS (In re Allen)*, 32 B.R. 93, 95 (Bankr. D.Or.1983) (bank had right to have its interest subrogated to prior security interest held by third party because bank paid off prior lien; bank's negligence and ignorance were excusable because intervening lienholder was not misled); *Equity Sav. & Loan Ass'n v. Chicago Title Ins. Co.*, 190 N.J.Super. 340, 463 A.2d 398, 399–400 (App. Div.1983) (applying doctrine of subrogation by equitable assignment to new lender who refinanced prior loan and used part of loan proceeds to cancel prior mortgage, and putting new lender in same priority position as prior mortgagee); Palmer, *supra,* § 3.6. *See generally Discharge of Mortgage, supra,* 98 A.L.R. at 847. We determine,

therefore, that the differences between the 1976 and 1977 mortgages and the 1982 mortgage are not sufficient indication that Security Federal intended to subordinate its prior liens. As stated above, it is undisputed that Security Federal did not have actual knowledge of the transcript of judgment when it executed the 1982 mortgage and released the 1976 and 1977 mortgages. The releases were executed with the 1982 loan and mortgage as part of the same transaction.

Having reviewed the trial transcript in this case, we also find no evidence of any paramount equities favoring Roberts as the junior lienholder. There is no evidence that Roberts relied on the release of the prior mortgages when he accepted the assignment of the judgment against Joe W. Priestley in 1983. Although the trial court did not make specific findings on this issue, any finding it may have made to the effect that paramount equities favored Roberts could not be supported by the evidence. *See Houston Lumber,* 94 N.M. at 547–48, 613 P.2d at 417–18 (trial court's finding that paramount equities favored construction and materialmen's liens was not supported by substantial evidence). Instead, Roberts would be unjustly enriched if the transcript of judgment were to gain a senior priority to the 1982 mortgage. *See Connecticut Nat'l Bank v. Chapman,* 153 Conn. 393, 216 A.2d 814, 817 (1966); *Equity Sav. & Loan Ass'n,* 463 A.2d at 399–400. Therefore, Security Federal is entitled to relief under the doctrine of equitable reinstatement of liens.

The reinstatement of Security Federal's prior lien, however, is limited to the outstanding balances on the 1976 and 1977 loans and does not include any additional amounts loaned and secured by the 1982 mortgage. *See Heller v. Gate City Bldg. & Loan Ass'n,* 75 N.M. 596, 599, 408 P.2d 753, 755 (1965) (mortgage for a specific sum cannot be enlarged against others who have acquired rights in property); *see also* Palmer, *supra,* § 3.6.

■ We recognize that the trial court may have relied on its findings that the title company had acted as Security Feder-al's agent in examining the title to the property and that Security Federal was bound by this knowledge, or that Security Federal had constructive knowledge of the transcript of judgment because it was recorded. *But see Ruiz v. Garcia,* 115 N.M. 269, 272, 850 P.2d 972, 975 (1993) (prior to 1985 enactment of NMSA 1978, Section 59A–30–11(A) (Repl.Pamp.1992), if title company had not contracted to perform title search, any search it performed was solely for its own use and protection). While there is some contrary authority, we are persuaded that the better view is that constructive notice and negligent ignorance of the intervening lien are immaterial to whether the equitable reinstatement of a prior lien should be allowed. *See* Osborne, *supra,* § 282.

Therefore, since it did not have actual knowledge of the transcript of judgment when executing the 1982 mortgage and releasing the prior mortgages, Security Federal was operating under a mistake of fact and, in the absence of paramount equities, was entitled to relief by reinstating the seniority of its lien in the amount of the outstanding balance due on the 1976 and 1977 mortgages. *See Kellogg Bros. Lumber Co. v. Mularkey,* 214 Wis. 537, 252 N.W. 596, 598 (1934); *see also Discharge of Mortgage, supra,* 98 A.L.R. at 848–49.

■ Because Security Federal would have had a meritorious defense by asserting the seniority of its prior liens against Roberts' claim in the adverse foreclosure proceeding, we determine as a matter of law that Barnhart's negligence in failing to represent Security Federal proximately caused it damages in the amount of the outstanding balance of the 1976 and 1977 mortgages, or approximately $118,000. *See Cano v. Lovato,* 105 N.M. 522, 535, 734 P.2d 762, 775 (Ct.App.) (proximate cause "is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred"), *cert. denied,* 104 N.M. 246, 719 P.2d 1267 (1986), *and cert. quashed,* 105 N.M. 438, 733 P.2d 1321 (1987). We reverse and remand for the entry of findings

and conclusions that Barnhart's negligent failure to represent Security Federal in the adverse foreclosure proceeding proximately caused Security Federal damages in the amount of the outstanding balances of the 1976 and 1977 mortgages.

## BARNHART'S NEGLIGENCE BASED ON FAILURE TO NOTIFY THE TITLE INSURANCE COMPANY OF THE ADVERSE CLAIM AS A PROXIMATE CAUSE OF DAMAGES

■ We address this issue because Security Federal could potentially recover damages to the extent of the policy limit of $200,000. The insurance policy insured against loss or damage and against costs, attorney fees and expenses incurred or sustained by Security Federal because of any lien on the property insured. The policy included a provision stating:

> If such prompt notice shall not be given to the Company [First American], then as to such insured all liability of the Company shall cease and terminate in regard to the matter or matters for which such prompt notice is required; provided, however, that failure to notify shall in no case prejudice the rights of any such insured under this policy unless the Company shall be prejudiced by such failure and then only to the extent of such prejudice.

Under this policy, Security Federal could not recover under the policy to the extent First American was prejudiced by the late notification.

Having determined that Security Federal could have successfully defended its claim against Roberts in the adverse foreclosure proceeding, First American, as the insurer, could have similarly protected Security Federal's interest in the adverse foreclosure and thereby reduce its liability to Security Federal under the title policy. *Cf. USLife Title Ins. Co. v. Romero,* 98 N.M. 699, 702–03, 652 P.2d 249, 252–53 (Ct.App.) (title company's negligent failure to exclude or except IRS lien from coverage bars subrogation of claim, but does not relieve title company of its liability to insured), *cert. denied,* 98 N.M. 336, 648 P.2d

794, *and cert. quashed,* 98 N.M. 762, 652 P.2d 1213 (1982). Because Barnhart failed to notify First American of the adverse claim, First American was prejudiced by losing the opportunity to defend against the claim and protect Security Federal's priority position. *See Worthey v. Sedillo Title Guar., Inc.,* 85 N.M. 339, 341–42, 512 P.2d 667, 669–70 (1973). Because First American was prejudiced by the late notice, it was not liable to Security Federal under the title insurance policy, and Security Federal suffered damages as a result of the late notice.

The trial court, however, found both Barnhart and Security Federal negligent in protecting Security Federal's rights under the title insurance policy. The basis of Security Federal's negligence in this regard is not clear from the trial court's findings of fact or conclusions of law, however. We note, having determined that First American was prejudiced by the late notice and, therefore, validly denied liability under the policy, that Security Federal cannot be negligent for failing to pursue what would have been a meritless claim against First American. Because the basis for the trial court's determination regarding Security Federal's negligence is not clear and because the trial court was not required to apportion liability between Barnhart and Security Federal based on its other determinations, we reverse and remand for the entry of new findings and conclusions. These findings and conclusions should state the basis, if any, of Security Federal's negligence in sending the late notice to First American and should apportion the liability for Security Federal's losses under the title insurance policy.

## CONCLUSION

We affirm the determination that Barnhart was negligent. We reverse the determination that Barnhart's negligence was not a proximate cause of any damages. As to damages from Barnhart's negligence in failing to represent Security Federal in the adverse foreclosure proceeding, we reverse and remand for the entry of a judgment in favor of RTC for damages amounting to the outstanding balances due on the 1976

393

and 1977 mortgages. As to damages from Barnhart's failure to timely notify First American of the adverse claim, we reverse and remand for the entry of findings of fact and conclusions of law determining the basis, if any, of Security Federal's negligence in failing to timely notify First American. The trial court should then apportion liability between Barnhart and Security Federal and apply the apportionment to the difference between the approximately $118,000 of outstanding balances on the 1976 and 1977 loans and the $200,000 policy limit and enter judgment accordingly. RTC shall recover its costs on appeal.

**IT IS SO ORDERED.**

MINZNER, C.J., and APODACA, J., concur.